### Andrew H. Hunter and another v. The New York and Saginaw Solar Salt Company.

*Contract.  Construction.*—The defendant had contracted with certain mill men for the sawing and delivery, by a specified time, of a quantity of lumber, said lumber to be delivered on board of scows, to be furnished by defendant.  He thereupon entered into a written contract with plaintiffs for the removal of said lumber—the substance of said two contracts being recited therein.  Plaintiffs were to furnish men, lighters, and everything necessary for the work, at a specified price, to be paid by defendant, for every one thousand feet so removed, and to convey said lumber upon their scows from the point of delivery to defendant's docks, as fast as it should be ,received, "provided it should be sawed so fast, by said mill owners."

In an action by plaintiff to recover damages of defendant, for failing to supply the amount of lumber agreed upon:  *Held*, that plaintiffs must be presumed to have taken into consideration the nature and extent of the risk in fixing the price they were to receive for the transportation.

*Held*, further, that taking the whole contract together, it was clearly implied, that the said stipulations were subject to the implied condition that said mill owners should first saw and deliver the lumber under *their* contracts.

*Heard November 8th and 9th,* 1865.  *Decided January 6th.*

Case made for review upon the law and the facts from Saginaw Circuit.

This was an action of assumpsit brought to recover damages for the failure, by the defendant, to furnish certain lumber for shipment, as fast as the plaintiffs could remove it.

The declaration contained a special count, setting forth, that by the default of the defendant in not furnishing lumber for shipment, according to the terms of the contract, the plaintiffs suffered damage by reason of their scows remaining unemployed, and in the loss of time of the men engaged for that purpose.  It was admitted by the plaintiffs that full

payment had been received for all work actually done, and that they made no claim except on said special count.

The cause was tried without a jury, and judgment rendered in favor of plaintiffs for $1807.58 damages, and costs to be taxed; to which judgment defendant excepted.

The facts are fully stated in the opinion.

*John J. Wheeler*, for plaintiffs:

1. The plaintiffs claim, that the contract between the parties, reasonably construed, contains a promise by the defendant that the lumber which the plaintiffs undertook to carry should be ready for them, when and where they were bound to receive it for transportation.

Whatever may be implied from the terms or language of an instrument, is in judgment of law contained in it:—10 *Wend.* 219, 252; *same case*, 13 *Id.* 114; 5 *M. & G.* 316; 5 *A. & E. N. S.* 671.

Where the agreement is mutual, by being expressed in the words of both parties, as is imported by the words "it is agreed," it is implied, if not so expressed in terms, that the promise of one party is the exact counterpart of that of the other, and co-extensive, unless this implication is controlled or restrained by something in the instrument:—1 *Saund.* 319; 6 *Com. Bench*, 160; 4 *Com. Bench*, 479; 17 *Barb.* 260; 5 *Hill*, 256. We must construe all the contracts together, in order to arrive at the obligations of the parties to the contract sued on.—2 *Pars. on Con.* 15 *n. u.*

The absolute agreement to carry the whole quantity imports a corresponding agreement by the defendant not to pay for the carriage only, but to furnish it; in other words, the agreement to furnish it is a counterpart to that to carry it.

The reference to the contracts for the lumber was obviously to bind the plaintiffs with notice of the place where, by whom, and to whom the lumber was to be delivered for transportation. The recitals are silent as to any uncertainty whether all

the lumber would be delivered, and are not inconsistent with either an absolute or contingent obligation by either party to this suit. The form and the substance, the words used, and the spirit of the transaction, concur to fix on the defendant the duty, and in legal effect the promise, to furnish the lumber for transportation.

The plaintiffs were ready and willing to perform.

The defendant having failed,

2. What is the measure of damages?

The rule of damages is one dollar per thousand feet, for the difference between the 4,000,000 agreed to be carried and the amount furnished them for carriage.—15 *Johns.* 327.

3. If plaintiffs had been dismissed before they had incurred any expense, the rule would have been the difference between the contract price and the cost of doing it; if dismissed after some expense and some progress in the work, there would require to be added to such difference last spoken of compensation for the outlay.

In this case, the cost of completing the entire work as agreed to was incurred, and thereby, by doing as they had agreed to, the plaintiffs were prevented from carrying other freight, and by defendants fault, the freight stipulated.

The contract is one in effect to furnish as freight 4,000,000 feet of lumber for a boat or boats, adequate to carry it, and so the carrier is entitled not only to the stipulated freight for the amount carried, but dead freight for the deficiency, $1970.05.—*Abbott on Ship.* 249, 264, 411; *Sedgw. on Dam.* 377; 2 *Greenl. Ev.* § 261 *u. and note*; 2 *Starkie*, 450; 15 *Johns.* 327; 11 *East*, 232; 12 *Id.* 494; 24 *Wend.* 304.

*William L. Webber*, for defendant.

The rights of the parties must be determined from the contract itself. It is a question of construction, and although it is true that the Court will inquire into the circumstances surrounding the parties and attending the transaction, that it may with greater certainty interpret the language used by

them, yet after that is done the rights and liabilities of the parties must be found in the language chosen by them and used in the contract.—5 *Mich.* 210; 1 *Greenl. Ev.* § 275.

The plaintiffs contend, and the Court below held, that by the terms of this contract the defendant obliged itself to furnish for carriage 900,000 feet each month from the docks of the mills of Sears & Co., and of Babcock & Bliss, and this obligation is found by implication, because it nowhere appears in the contract in express terms.

We contend that such was not the intention of the parties. There was no obligation resting on the defendant to furnish the lumber for carriage. The lumber was not made when the contract was entered into. This fact was known to both parties. It was doubtless anticipated by all concerned that it would be made. The defendant nowhere assumes to guaranty that Babcock & Bliss, and Sears & Co. shall perform their contracts. The plaintiffs were in the business of carrying lumber. They knew the parties who were to make the lumber, and could as well tell the probabilities as the defendant. Why should the contracts with Sears & Co. and with Babcock & Bliss be shown to the plaintiffs before contracting, if defendant bound itself to furnish the lumber? The recital is senseless if the plaintiffs' position be correct.

Again, if defendant intended to be bound to furnish the lumber, the contract would naturally have been to carry such lumber from the docks as defendant should direct, with the privilege of sending them to other docks by paying for extra labor or expense, if any. In this way the defendant would reserve the power to perform.

Should it be held that the defendant did contract to furnish the lumber for the plaintiffs to carry, the possibility of the defendant's performance depended on facts as well known to plaintiffs as to defendant, and the parties having equal knowledge, doubtless contracted with reference to the lumber being sawed; and as the defendant was prevented from furnishing the lumber by the default of the mill owners, who did not

saw it, it became impossible for the defendant to perform, and this impossibility is a good defense, especially as the parties having equal means of judging of probabilities must have contracted with reference to this particular subject. — 2 *Pars. on Con.* (*5th ed.*) 672; 20 *Me.* 453; 22 *Id.* 531; 1 *Gray,* 282.

The judgment below is greater than the special damages claimed by plaintiffs for loss of freight.

CHRISTIANCY J.

This is a case made after judgment in the Circuit Court for the county of Saginaw, for review upon the law and the facts.

The defendant had, on the fourth day of January, 1864, entered into two separate contracts, one with Babcock and Bliss for the sawing and delivery to the defendant of two million feet of pine lumber, the contractors (B. & B.) to commence the delivery of the lumber at the starting of their saw mill in the spring of 1864, and to have all said lumber sawed and delivered on or before the first of October, 1864; the lumber to be delivered on the scows of the defendant on the dock of said Babcock and Bliss' mill, provided defendant should furnish scows at such dock to receive it; and if said scows were not furnished, then to deliver and pile said lumber at the dock of the Chicago mill, so called, opposite, and across the river from East Saginaw, in as convenient a manner as possible for loading upon scows. The other contract of the same date was with F. P. Sears & Co., for a like quantity of lumber to be sawed by the latter, and to be delivered to the defendant at the rate of five hundred thousand feet per month, from the time of starting their mill in the spring of 1864, until the entire amount should be delivered; the delivery to be upon scows of the defendant, and if these were not furnished, then to be delivered and piled upon the dock of their mill, in East Saginaw, in as convenient a manner as possible for loading upon scows.

The defendant having entered into these contracts, after-

wards, on the 17th day of March, 1864, and before, by these contracts, the sawing was to be commenced, entered into a written contract with the plaintiffs, in the following words:

" *This agreement*, made this seventeenth day of March, A. D. 1864, between Andrew H. Hunter and George W. Hotchkiss, of Bay City, Michigan, constituting the firm of Hunter and Hotchkiss, of the first part, and the New York and Saginaw Solar Salt Company. of the second part, *witnesseth*,

Whereas, said second party has a contract with Messrs. Babcock and Bliss for the purchase of two million feet of lumber, to be delivered at their mill, in Saginaw, in the early part of the present season, and have also a contract with Messrs. F. P. Sears & Co., by the terms of which said F. P. Sears & Co. have agreed to sell and deliver to said second party a like quantity of lumber, to be delivered at their mill in the early part of the present season; and,

Whereas, said second party is bound by the terms of said agreements, (which agreements said first parties have examined and know the contents thereof,) to receive said lumber at the docks of said Babcock and Bliss, and F. P. Sears & Co., when sawed, and to remove the same; and,

Whereas, said first parties are desirous of contracting to remove said lumber from the mills of said Babcock and Bliss, and F. P. Sears & Co., and to deliver the same to said second party at its docks and works on the west bank of Saginaw river, just below Zilwaukie, in Saginaw county, and at the docks of the Michigan Salt Company;

*Now, therefore*, It is agreed by and between said parties, as follows: Said first parties, in consideration of the agreements hereinafter contained, to be kept and performed by said second party, agree to take all the lumber so to be delivered to said second party, by Babcock and Bliss, and by F. P. Sears & Co., under the contracts above referred to, and to receive the same in assorted piles upon the docks of the mills where sawed, and convey upon boats or scows, and deliver three million five hundred thousand feet of said lum-

ber to said second party upon its docks at its works below Zilwaukee, in Saginaw county, and five hundred thousand feet of said lumber upon the docks of the Michigan Salt Company; all to be delivered for the price of one dollar per thousand feet, to be paid as hereinafter stated.

Said first parties further agree that they will furnish all the men and lighters, and everything else needful for the prosecution and completion of said work, according to the terms of this agreement, and will receive and remove said lumber from the docks of the mills where manufactured, as fast as the same shall be sawed, and will not at any time allow said lumber to accumulate at the docks of either mill where sawed, to an amount exceeding one scow load at each mill.

Said first parties further agree, that in receiving, conveying and delivering said lumber to said second party at its docks, and at the docks of the Michigan Salt Company, as above specified, they will handle said lumber in a careful and proper manner, so as not to injure the same, and will snugly pile all said lumber upon the docks of said second party and said Michigan Salt Company in assorted piles, placing each length, kind, and quality of lumber in a pile by itself, and will pile said lumber at such places and upon such portions of said docks as said second party, by its superintendent, may from time to time direct.

Said first parties further agree that they will commence the delivering of said lumber upon the docks of said second party within fifteen days from the time that either Babcock & Bliss or F. P. Sears & Co. shall commence to saw and deliver lumber to said second party under the contracts above mentioned, and as much sooner as possible, and will deliver said lumber as fast as it shall be required by Harvey D. Burrell, who has the contract for constructing and erecting the Solar Salt Works for said second party, *provided it shall be sawed so fast by Babcock & Bliss and F. P. Sears & Co., or either of them.*

Said second party agrees to pay said first parties for con-

veying, delivering, assorting and piling said lumber as above specified, the sum of one dollar for each thousand feet of lumber so conveyed, delivered, assorted and piled, payable semi-monthly at the middle and close of each month, according to the inspector's certificate of quantity, as the work progresses, in drafts of the superintendent of said company at one day's sight, on the company in New York."

The plaintiffs entered upon the performance of this contract, and transported, delivered and piled a large portion of the lumber. But Babcock and Bliss, and F. P. Sears & Co., failed to furnish the whole amount of the lumber, according to their respective contracts; and as to the portion which they did saw and deliver, they failed to do so in due time, or in the manner provided by their contracts; and though the plaintiffs did transport and deliver the portion so furnished, yet by such default of these contractors, the plaintiffs' scows and lighters were kept a considerable portion of the time on demurrage, not being able to obtain full loads; and were also put to considerable expense in the loss of time of the men in their employ, &c., besides being prevented from earning the contract price of one dollar per thousand for that portion of the lumber not furnished at all.

This suit is brought to recover the damages thus sustained. The plaintiffs' declaration is framed upon the theory that the defendant, by its contract with the plaintiffs, bound itself to furnish all the lumber for carriage which Babcock & Bliss and F. P. Sears & Co., by their contracts were bound to furnish, and within the same time and in the same manner; or, in other words, that defendant guaranteed to the plaintiffs the performance of those contracts.

There is certainly no express provision of this kind in the contract between the plaintiffs and the defendant; but it is claimed that by fair construction such is its legal effect. We have carefully examined this contract in connection with those referred to, but have been unable to draw such a conclusion from them.

14 MICH.—N.

It is true there was no privity of contract between the plaintiffs and Babcock & Bliss, or F. P. Sears & Co.; and the plaintiffs could therefore have no remedy against them for the breach of their contracts with the defendant, while the defendant might enforce their liability for such breach; it would therefore have been very reasonable, had the parties so agreed, that the defendant should have guaranteed to the plaintiffs the performance of those contracts. But it was equally competent — and if so understood by the parties, for aught we can see equally reasonable — for the plaintiffs to take upon themselves the risk of performance by those parties so long as their obligations to carry were limited to the amount of lumber which those parties should actually furnish under their contracts. The plaintiffs, in such case, would be presumed to have taken into consideration the nature and extent of the risk in fixing the price they were to receive for the transportation.

Upon a fair construction of the contract, this, we think, is what the plaintiffs must be understood to have done by their contract with the defendant. If such were not the intention, we see no satisfactory reason for the peculiar manner in which the contracts of defendant with Babcock & Bliss, and Sears & Co., are referred to in the contract, nor any very good reason why those contracts should have been referred to at all. The language of the reference is, "which agreements said first parties have examined and know the contents thereof."

How was it important that plaintiffs should have seen these contracts, and known their contents, if, as they insist, the defendant was understood to be bound that all the lumber should be absolutely furnished at the times, and in the manner claimed? Had such been the intention, would it not have been much more natural to have bound the defendant in direct terms thus to furnish it?

The other stipulations of the contract, [to say nothing of its entire silence on the subject of any guaranty,] are in

accordance with the views we have taken. Thus, the plaintiffs are to deliver the lumber as fast as it shall be required by Harvey D. Burrell, "*provided it shall be sawed so fast,* by Babcock & Bliss, and F. P. Sears & Co., or either of them."

The defendant agrees to pay "one dollar for each thousand feet of lumber, so conveyed, assorted and piled."

But the plaintiffs insist that the provision binding them to carry, assort and pile this lumber, shows a contrary intent. The plaintiffs "agree to take all the lumber so to be delivered to said second party, by Babcock & Bliss, and F. P. Sears & Co., under the contracts above referred to." This certainly cannot be intended to bind the plaintiffs to carry it, if it be not sawed and furnished by the contractors. And the same may be said of plaintiffs' undertaking, to "deliver three million five hundred thousand feet of said lumber to said second party, upon its docks at Zilwaukie, and five hundred thousand feet at the dock of the Michigan Salt Company." Taking the whole contract together, it is clearly implied that these stipulations are subject to the implied condition, that Babcock & Bliss, and Sears & Co., should first saw and deliver the lumber under their contracts. Any other construction would make the plaintiffs guaranty to the defendant the performance of these contracts, a most unreasonable construction, and yet one which would do quite as little, and even less violence to the words of the contract, than that which should make the defendant guaranty to the plaintiffs the performance of the same contracts.

It is unnecessary to consider the evidence in reference to a subsequent verbal contract, or promise of Sewell, the agent of the defendant, to pay for demurrage, &c., as there is no count in the declaration upon such a contract; and the plaintiffs on the opening of their case expressly abandoned all claim to recover anything, except the damages for the violation, on the part of the defendant of the contract set out in the special counts of their declaration, and admitted they had no claim, except on such special counts.

HUNTER *v.* THE NEW YORK AND SAGINAW SOLAR SALT CO.

The judgment for the plaintiffs in the court below must be reversed, and a judgment entered for the defendant in this Court, with his costs in both courts.

COOLEY and CAMPBELL JJ. concurred.