## John Phillips v. Ebenezer Raymond et al.

*Contract, construction of.*  By the terms of a contract, one Phillips agreed to take and receive from defendants all of certain lumber that their mill should get out, up to October 15, 1864. That the price per thousand feet was fixed; and the lumber was to be delivered at a certain pier.

That said Phillips should pay said defendants $500, February 1, 1864, on logs already purchased by them; said amount to be secured by logs and placed in the name of said Phillips on the books of defendants, and thereafter all logs to be purchased in the name of said Phillips; and the said Phillips agreed to pay on them $500 March 1, and $500 March 15. The balance of payments to be made on delivery of said lumber, in drafts, payable at thirty and sixty days'

sight, in Chicago.    That if the measurement of said lumber should overrun the scalage, the difference to belong to said Phillips, and all lumber remaining unshipped after October 15, to be paid for at that time in drafts as above mentioned.

Under said agreement a large amount of logs were got out and placed in the name of plaintiff on defendants' books, and sawed by defendants, and a portion of the lumber delivered.

In an action of replevin, brought by plaintiff for part of this lumber, it was *held,*

1.    That the effect of said contract was to place the logs, out of which said lumber was manufactured in the name of the plaintiffs as security only.

2.    That the object of the security was not only to secure any advances that might be made, etc., but for the faithful performance by defendant of the entire contract on their part.

*Held further,*    That defendants were bound to deliver said lumber on a proper demand, and that the refusal of the defendants to deliver, without assigning any reason or claiming anything due them (it not appearing that the plaintiff refused to pay according to the contract), rendered it unnecessary to inquire into the state of the accounts between the parties.

*Heard July 11th.    Decided October 7th.*

Case made from Allegan Circuit.

This was an action brought to recover the possession of 50,000 feet of lumber, claimed to be the property of plaintiff, and unlawfully detained by defendant.

The declaration was in the usual form, and the plea was the general issue.

Judgment was rendered in favor of plaintiff.

The case turns upon the construction of a certain contract, and which is fully set forth in the opinion.

*D. Darwin Hughes,* for plaintiff.

*A. B. Maynard,* for defendants.

CHRISTIANCY J.

This was an action of replevin for about fifty thousand feet of white wood lumber, consisting of chair plank and boards.    The plaintiff recovered a judgment in the court below, which is brought to this court upon a case made for review upon the law and the facts, under the statute which has since been repealed.

PHILLIPS v. RAYMOND ET AL.

The main question in the case depends upon the construction to be given to a written contract, of which the following is a copy:

"*Memorandum of agreement, between Raymond & Abbott, Ganges, Allegan County, Michigan, and John Phillips, chair manufacturer, Chicago, Cook County, Illinois.*

*First*, That the said John Phillips agrees to take and receive from the first party aforesaid, all the cherry, white wood, beech and maple lumber that their mill is able to get out up to the fifteenth day of October next, 1864.

*Second*, That the said lumber shall be cut according to bill rendered by the said John Phillips.

*Third*, That the price to be paid for the same is $16 per thousand feet for cherry, and $10 per thousand feet for white wood, beech and maple, delivered on board vessel at Pier Cove, Michigan.

*Fourth*, The said lumber is to be measured by the parties interested, or others chosen by them.

*Fifth*, The said John Phillips to pay said Raymond & Abbott $500 on the first day of February next, on logs already purchased by them, said amount to be secured by logs, and placed in the name of John Phillips on the books of Raymond & Abbott, and thereafter all logs to be purchased in the name of said John Phillips; and the said John Phillips agrees to pay on them $500 on the first of March, and $500 on the fifteenth of March. The balance of payments to be made on delivery of said lumber, in drafts payable at thirty and sixty days sight in Chicago.

*Sixth*, It is understood that if the measurement of said lumber overruns the scalage the difference belongs to said John Phillips, and all lumber remaining unshipped after the fifteenth of October to be paid for at that time in drafts as above mentioned.

| U. S. Revenue Stamp, Five Cents. | RAYMOND & ABBOTT,<br>JOHN PHILLIPS,<br>*per* M. S. PHILLIPS. |

GANGES, January 23, 1864."

Under this agreement a large amount of logs were got out and placed in the name of the plaintiff on the books of the defendants, and subsequently sawed by defendants;

and it was for a part of this lumber that the action was brought.

It will be noticed that this contract fixes no price for the logs, nor is any specified amount of logs required to be got out; nor was the plaintiff thereby bound to make advances upon logs at any particular rate, in proportion to the amount of logs which the defendants should obtain. But all the plaintiff was, by the contract, bound to pay or advance on logs was $500 on the first of February ( "on logs already purchased" by defendants,) $500 on the first of March, and $500 on the fifteenth of March, "the balance of payments to be made on delivery of said lumber, in drafts payable at thirty and sixty days sight in Chicago. This balance can not be construed as intended to include only the balance on logs; but it clearly includes, if it is not confined to, the balance which might become due for the lumber to be delivered, at the prices fixed by the contract, after deducting the $1,500 required to be paid by the plaintiffs on the days mentioned. But it would seem from the testimony of William Phillips, the plaintiff's agent, that there was some subsequent understanding by which the logs were to be called $5 per thousand feet.

Besides the logs already purchased by the defendants, a large amount of other logs were purchased by them and placed in the name of the plaintiff on their books, subsequently sawed at their mill, and some three hundred and eighty - eight thousand feet of the sawed lumber had already been delivered to the plaintiff, when the defendants refused to deliver the balance, some fifty thousand feet, sawed from the same logs, for which this action was brought.

The plaintiff had, from time to time, paid considerable sums, before and during the delivery of the lumber. But the exact state of the account may, or may not, be material, according to the interpretation given to the contract, and the ground upon which the defendants based their refusal.

Did this contract have the effect to make these logs and the lumber produced from them, in the hands of the defendants, the absolute property of the plaintiff, irrespective of the question whether he had paid, as by the contract required? I think not.

Construing the instrument with reference to the situation of the parties and in the light of the surrounding circumstances, I am satisfied that the real intention was to place the logs in the name of the plaintiff, as *security* only. The logs already on hand, it is expressly declared, shall be placed in the name of the plaintiff as *security*. The other logs were to be purchased and placed in the plaintiff's name, and he was to pay further sums of money, on the days specified, and though, as to these logs, the contract does not expressly say "as security," yet, as they are placed in the same condition in all other respects, and all alike to be sawed and the lumber delivered to the plaintiff at the same specified prices to be paid by him, I see no possible ground for making any distinction between the logs "already purchased," and those to be purchased; and I am entirely satisfied that, upon the true interpretation of the contract, they were all alike to be held as security, and not as the absolute property of the plaintiff. By the contract the plaintiff was only bound to pay $1,500 as applicable to logs, while all the logs the defendants should thereafter purchase, though they might amount to three times that sum, were alike to be put in his name; and if it is true, as plaintiff's testimony proved, that the logs were understood to be $5 per thousand feet, then it is clear, from the quantity of lumber actually delivered, that defendants must have purchased logs much beyond what the $1,500 would pay for—to say nothing of the fifty thousand feet they refused to deliver. If the intention was that they should be held (with the lumber they should produce) as the absolute property of the plaintiff, then, if the lumber were all sawed,

and the plaintiff should refuse to make any payments for the lumber delivered to him under the contract, the defendants would have no right to refuse to deliver the whole, though they should not have received a cent, and though the plaintiff was, by the contract, bound to pay for it on delivery in the manner specified. Clearly, as it seems to me, this could not have been the intention of the parties.

But it is urged that the sixth clause of the contract, giving the plaintiff the excess, if the measurement of the lumber should overrun the scalage of the logs, is repugnant to the idea of mere security, and conclusive that the absolute property was intended to pass. In some kinds of contracts, and under a different state of circumstances, such a clause might have a strong bearing in the direction claimed. But in the present case, this view, as I have endeavored to show, would be in conflict with the whole scope and object of the contract. And when we consider that the plaintiff was making advances without any stipulation for interest, and that it would have been perfectly consistent with the idea of security only, to have inserted, in place of this stipulation, an agreement for interest at ten per cent. or for the delivery of lumber beyond what these logs should make, or that eleven hundred feet should be counted as one thousand in making delivery, it is not difficult to see that the present stipulation may stand upon the same principle; and on this view, it will be found in no way repugnant to the idea of mere security. It was competent and not unreasonable for the plaintiff, in agreeing to advance his money on these logs and to take the lumber at specified prices, to stipulate for such advantages in regard to the lumber as the defendants were willing to assent to. The fact that the defendants had the logs assessed to the plaintiff instead of themselves, can not alter the construction of the contract. This was a subsequent matter arising between other parties, and though the defendants may have been anxious

to escape taxation, this did not change the legal effect of the instrument.

But the more important question is, *first,* whether the logs and lumber were to be held as security merely, for the advances to be made by the plaintiff, or these and any balance of accounts at any time his due in the course of the transaction, as claimed by the. counsel for the defendants; or, *second,* as security both for such advances, etc., *and for the performance by the defendants of the entire contract?*

The contract, if we look merely to its words, is not specific upon this point; but when we consider its subject matter and the relative positions and objects of the parties, we can not suppose that security for advances upon logs, or logs and lumber, was the plaintiff's only object in requiring this security. He was not engaged in the business of lending or paying out money, and taking security merely for the purpose of getting it back, without interest, or even with it. He was carrying on the business of a chair manufacturer, in Chicago, and from this fact, and the description of the lumber, it is reasonable to suppose that his principal object, in entering into the contract, was to obtain this lumber for use in that business; and that his primary object in requiring the particular stipulations of the contract, was to secure this object. And it was to this end and for this object he agreed to, and did advance his money. We must therefore conclude that the object of this security was, not only to secure such advances, and any balance of account at any time in his favor in the course of the transaction, but also for the faithful performance, by the defendants, of the entire contract on their part.

This conclusion renders it necessary to inquire whether the defendants were in fault for refusing to deliver the lumber, or whether there was any failure or refusal of the plaintiff to perform his part of the contract which would justify the defendants in their refusal.

It is very difficult, from the confused state of the evidence upon the point, to determine the actual state of the account between the parties at the time. From the best consideration I have been able to give it, I am not entirely satisfied in whose favor the balance was, if in fact there was any balance either way. The accounts would seem to have been nearly balanced. Perhaps upon the strict rules of evidence applied to the particular items, there might have been a balance in favor of the defendants of between $30 and $40; while there are some circumstances ( not amounting to full proof ) tending to show that certain other items ought to be allowed to the plaintiff, which would turn the balance in his favor.

But we do not, in the aspect which the case presents, deem it essential to ascertain precisely the state of the accounts between the parties. The defendants did not base their refusal to deliver the lumber upon the ground that the plaintiff was in arrear, or had not paid according to the contract.

There is some slight evidence that in excusing to other persons, not interested, their refusal to deliver the lumber, the defendants claimed that the plaintiff was owing them. But there is no legal evidence in the record showing, that in any of the interviews with the plaintiff's agent, who demanded the lumber, the defendants claimed that there was any thing due, or that the plaintiff had failed, in any particular, to perform his part of the contract; a claim which it would have been very natural for them to make on such an occasion, if it had any basis in fact.

On the contrary, when the defendants were requested to deliver the lumber, their reply was that "they had no lumber then belonging to John Phillips ( the plaintiff ); that they would ship no more lumber on this contract; that the contract was good for nothing; that they had found out the contract did not bind them, and they would deliver no more lumber on it."

PHILLIPS *v.* RAYMOND ET AL.

The plaintiff's agent tendered them $500 (which would have paid for the fifty thousand feet demanded), demanding the lumber, which they refused, and the money was left in the hands of Weaver for them. The agent also stated that the books showed that defendants owed the plaintiffs; and that, if plaintiff owed them anything, he would pay them in drafts at thirty and sixty days sight. To this they appear to have made no reply; and, so far from claiming any particular sum due, did not insist that there was anything due, but silently adhered to their refusal.

Payments, by the contract were to be made in drafts, and there is no evidence that the plaintiff had ever refused to pay as agreed. Under these circumstances, it does not lie with the defendants to say that if they had even claimed any particular amount due them, it would not at once have been paid. Their conduct, and the mode of their refusal, under the circumstances, certainly excused the plaintiff from any further tender of performance.

The defendants, on the second day of May, had written to the plaintiff, complaining that "owing to the rise in men's wages, their board, and all material for running their mill, they found that they were running behind in manufacturing lumber for him at $10," and they ask the plaintiff to allow them $2 more per thousand feet. This he does not seem to have acceded to. Taking this in connection with the manner of their refusal, it would seem to authorize a slight inference at least that the true reason for their refusal was that they found they were losing money by manufacturing lumber under the contract.

But, so far as this may bear upon the state of the accounts between the parties, we decide nothing. We see no valid excuse for the refusal of the defendants to deliver. The plaintiff was therefore entitled to recover, as held in the court below; and judgment must be rendered in this court for the plaintiff, with costs in both courts.

The other Justices concurred.