WILKES L. STUART v. WILSON M. WORDEN, SIMEON BABCOCK, DANIEL LORD, SUSAN PRICE, ARTHUR BROOKS AND MARY E. WILCOX.

*Mortgages—Construction of covenant from contemporaneous deeds and mortgage of the same land.*

A mortgage is to be construed most favorably for the mortgagee.

Where property is exchanged by deeds, and one grantee gives a mortgage upon that which he receives, to secure the difference in value, the deeds and mortgage may be read together and with reference to the circumstances, in construing the intention of the parties; and their manifest intent is not to be derogated from by adhering to the literal terms of the papers.

Equity regards substance rather than form, and enforces the actual intent if lawful and just.

W owned the equity of redemption in land mortgaged to D, but deeded the land to S in exchange for certain other property, and to equalize the trade and sustain his covenant of title, he agreed to pay a certain portion of the amount due on D's mortgage, and gave S a mortgage on the property he received, to secure this agreement.    S afterward quit-claimed the land to a third person subject to D's mortgage which the grantee assumed as part of the purchase price.    *Held* that on W's failure to pay D what he had agreed to pay on D's mortgage, S was entitled to foreclose the later mortgage given to him to compel such payment to be made to himself.

A mortgagee of land cannot avail himself of an agreement made by a mere owner of the equity of redemption to pay the mortgage, if he was not a party to it nor in any way liable for the debt secured by it.

Appeal from Newaygo.    Submitted October 15.    Decided November 29.

FORECLOSURE. Defendant Babcock appeals.

*Fuller & Standish* for complainant. The breach of a condition in a bond and mortgage, to pay an encumbrance, gives an immediate right of action, *Thurston v. Prentiss*, 1 Mich., 193; *Hall v. Nash*, 10 Mich., 304; *Butler v. Ladue*, 12 Mich., 179.

*George Luton* for defendant. Where a mortgager covenants to pay off an outstanding mortgage on the same property, and the mortgagee's security for the performance of the covenant is such that he cannot suffer loss, he is not injured, so long as no demand for payment has been made, *Halsey v. Reed*, 9 Paige, 446; *Curtis v. Tyler*, 9 Paige, 432; *Crawford v. Edwards*, 33 Mich., 354; and if the mortgagee conveys away the mortgaged land, he has no farther right to bring suit upon the mortgage, *Brewer v. Dodge*, 28 Mich., 359.

GRAVES, J. October 30th, 1872, complainant owned in fee and free from encumbrance a hotel property in the village of Newaygo and twenty acres of land near there. At the same time the defendant Worden owned a farm near the village of Lowell. On that day they agreed upon an exchange. Complainant's property was valued at $9000, and Worden's farm was estimated at $10,000. But the farm was encumbered, and Worden's interest was an equity of redemption and nothing more. Certain former owners had mortgaged it January 1, 1857, to David Dows of New York for $5000, with semi-annual interest at seven per cent, and $3000 was yet unpaid, though already due and payable by the terms of the mortgage, together with interest from July 1, 1872. Worden was not personally liable for the encumbrance, but its existence qualified and reduced his interest in the place.

It seems to have been understood by Stuart that an agreement had been made with Dows to extend the time, and the papers are clear that Worden so represented,

but in fact no such agreement had been made then or has been made since. The exchange was effected on these terms: Stuart conveyed his property at the price of $9000 and Worden deeded the farm upon the understanding that if the whole interest were included, it would be worth $10,000: but as his interest actually amounted to only $7000, it was agreed that he should bring his interest in the equity of redemption up to $9000 (the amount received from Stuart), by paying off $2000 of the Dows mortgage, Stuart being left to take care of the other $1000 still behind on that mortgage. The deed of Worden embraced the usual covenants, but following the covenant against encumbrances, the qualifying expression "except as above stated" was inserted. In the body of the instrument and preceding the covenants a special provision was inserted relative to the Dows mortgage, which will be again noticed further on.

As part of the transaction, and in order to secure Stuart for the difference of $2000 between what he transferred to Worden and what Worden transferred to him, and to equalize the exchange and support the covenants of title in the deed, Worden gave back a mortgage on the property he received from Stuart. It recited the transfer from Worden to Stuart and the encumbrance, and that Stuart assumed $1000 and that it was obligatory on Worden to pay the remainder as specified in the agreement embodied in Worden's deed to Stuart; and it further recited, among other things, that Worden claimed that there was a binding agreement extending the time of payment of the mortgage to the ninth of April, 1875. It then set forth that Worden in consideration of one dollar paid by Stuart, "and in order to secure the said Wilkes L. Stuart, his heirs and assigns, against loss or damage by reason of the failure of said Wilson M. Worden to pay the amount remaining unpaid on the mortgage hereinbefore specified, excepting the part thereof assumed by said Wilkes L. Stuart, and to secure the due performance of the covenants hereinbefore particularly mentioned, do by these presents," etc.

The condition was written in these terms:

"Provided always, and these presents are upon the express condition that if the said party of the first part shall well and truly pay or cause to be paid in due season all sums of money now remaining unpaid upon the said mortgage hereinbefore particularly specified, excepting the sum of one thousand dollars and interest thereon, the payment of which is and has been assumed by said Stuart, and shall save said party of the second part harmless from loss or damage by reason of the failure of the title to the lands conveyed to said party of the second part by said party of the first part, as hereinbefore particularly set forth as represented and covenanted in said deed, it being understood that said Worden is at liberty to obtain further extension of the time of payment of said mortgage debt, and that at any time when he shall perfect the record title of the lands this day conveyed by him to said Stuart, and hereinbefore particularly specified, so as to show a complete and perfect chain of title thereto down to him at this date, then this mortgage, so far as the same relates to the title to the said land, shall cease and be null and void, and shall, on such payment as aforesaid, entirely cease and be null and void; but in case of non-payment of the said sum *of money above specified, or of a failure of the title to* the lands hereinbefore particularly described as covenanted by him in said deed hereinbefore referred to, to be vested in him, the said Wilson M. Worden, at said date, then" etc., there being the usual conclusion, with the addition of a clause for an attorney's fee in case of proceedings to foreclose.

The agreement in Worden's deed, to which reference is made, is as follows:

"It is understood and agreed by and between the parties to this instrument that the lands hereinbefore described are conveyed subject to a certain mortgage thereon executed by W. P. Collins and A. O. Harron and wives January 1, A. D. 1857, to David Dows, for the sum of five thousand dollars, and recorded in the office of the Register of Deeds of Kent county, Michigan, in liber N of mortgages, on page 171, on which mortgage there is claimed to be unpaid the sum of three thousand dollars of principal, at this date, by the said Wilson M. Worden, and interest thereon at 7 per cent per annum, from July 1st, 1872. Of said sum of three thousand dollars the said Wilkes L. Stuart assumes the payment of one thousand dollars and interest thereon, agreeable to the terms of said mortgage; the remaining sum of two

thousand dollars and interest as aforesaid to be paid by said Wilson M. Worden, reference being had to a mortgage of even date herewith, executed by said Worden to said Stuart, conditioned for such payment, which mortgage is of record in the office of the Register of Deeds of Newaygo county, Michigan."

These instruments were placed on record about the time they were made.

February 12th, 1873, complainant, at the request of Worden, who still held the property which had been so conveyed to him, released the twenty-acre parcel from this mortgage. June 20, 1873, Worden deeded the residue, being the village property, to Francis King, who deeded to Susan Price in the following month. July 10, 1876, she deeded to Henry M. Wilcox and Mary E. Wilcox, and each of these grants was made expressly subject to complainant's mortgage. July 20th, 1876, these last named grantees gave two mortgages on the property; one to Simeon Babcock for $2151.67, and the other to Daniel Lord for $1671.13, and both remain. On the first of August following Henry M. Wilcox quit-claimed to his co-owner, Mary E. Wilcox.

December 21, 1874, and during Mrs. Price's ownership of the Newaygo property, complainant quit-claimed the Worden farm to one Pratt, subject to the Dows mortgage, and it was expressed in the deed that $3000, and interest at seven per cent from January 1, 1873, was claimed to be due on it, and that, as between complainant and Pratt, the latter assumed that sum, or whatever should become due, and that the same was part of the purchase price.

It appears that Worden paid the interest on $2000 of the Dows mortgage for the half year following July 1, 1872, and that since his purchase in December, 1874, Pratt has kept down the interest agreeably to his contract with complainant. But the mortgage has never been paid, and no proceedings have ever been taken to enforce it.

In the fore par of 1877 complainant filed this bill to

foreclose, in his name and in his behalf, the mortgage so made by Worden, and claiming that in truth the main design and effect of the transaction was to secure to him the difference between the interest he received from Worden and the interest he granted, and that the end was left to be effectuated through payment by Worden on the Dows mortgage, if seasonably made; but if not, then, as a necessary consequence, by payment to himself.

The defendants, Mary E. Wilcox, Susan Price, and Lord and Babcock, appeared and answered. The circuit court decreed for complainant, and all the defendants acquiesced except Babcock, who appealed.

The chief defense is that the mortgage is one merely of indemnity, and that Stuart has never been damnified within the sense of the condition. But further claims are asserted which are not fully covered thereby. It is said that complainant's case shows that the $2000 and interest were to be paid on the Dows mortgage and not to complainant, and that Worden could at any time have paid the money on that and thereby have fulfilled his obligation.

Again, it is said that having sold the farm encumbered by the Dows mortgage to Pratt, whatever right complainant had under the Worden mortgage passed to Pratt, and that complainant ceased to have any interest in the payment of the Dows mortgage, and lost all interest he may have had in the Worden mortgage; that Pratt acquired such a relation and interest as made him a necessary party, and that it was error to allow interest from January 1, 1873, inasmuch as Pratt had already paid that directly on the Dows mortgage.

The condition of complainant's mortgage is not clear, and so far as necessary the court is authogized to construe it most favorably for him as mortgagee. *Jerome v. Hopkins*, 2 Mich., 97.

It was given at the same time with the deeds, and as one of the writings necessary to perfect and complete

the exchange of properties, and hence the three are to be read together to explain the intention. *Bronson v. Green,* Walk. Ch., 56; *Norris v. Hill,* 1 Mich., 202; *Dudgeon v. Haggart,* 17 Mich., 275; Fonb., b. 1, ch. 6, § 14. And in order that the court may see just how the transaction came about and received the shape it actually bears, a reference is proper to the surrounding facts. *Grant v. Merchants' & M. Bank of Detroit,* 35 Mich., 515; *Paddack v. Pardee,* 1 Mich., 421; *Norris v. Showerman,* 2 Doug. (Mich.), 16; *Facey v. Otis,* 11 Mich., 213; *Hunter v. New York etc. Salt Co.,* 14 Mich., 98; *Phillips v. Raymond,* 17 Mich., 287. There is no requirement to adhere to the literal terms in derogation of the interior sense of the transaction.

Equity regards substance rather than form, and asserts and enforces the end actually aimed at, if lawful and just. Fonbl., b. 1, ch. 6, §§ 9, 18; *Kimball v. Myers,* 21 Mich., 276; *Thurston v. Prentiss,* 1 Mich., 193; *Dye v. Mann,* 10 Mich., 291; *Butler v. Ladue,* 12 Mich., 173; *Hurd v. Robinson,* 11 Ohio St., 232; *Reid v. Sycks,* 27 Ohio St., 285; *Popple v. Day,* 123 Mass., 520.

The circumstances are strong to show that the cause of the arrangement for Worden to reduce the Dows mortgage $2000 was to equalize the exchange and give Stuart an interest of the same value as that of the interest he conveyed. Worden was not in a situation at the time to make up the difference of $2000 by paying over the money, and Stuart was willing that the end should be attained by an enlargement of his interest in the farm, if effected in "due season;" and it was felt that it could be done in that way by payment made directly on the Dows mortgage. It was the design that it should certainly be paid sooner or later, and not that it should eventually lapse to Worden or his grantees, either as a gratuity or a forfeiture, and the implication is unavoidable that it was to be paid directly to complainant if not paid to him indirectly through payment in "due season" on the Dows mortgage.

As Worden was not a party to that mortgage, or in any way liable for the debt secured by it, his agreement with Stuart could not avail anything to Dows, who was a stranger thereto. *Turner v. McCarty*, 22 Mich., 265; *Daniels v. Eisenlord*, 10 Mich., 454; *Vrooman v. Turner*, 69 N. Y., 280. Stuart was the party to be benefited, and his benefit was not to be confined to a mere indemnity against an encumbrance of unlimited duration. He believed an extension of the time had been fixed by positive agreement, and the purpose was to require payment of the $2000 in "due season," or in other words, whenever Dows could lawfully call for it. He was deceived. Worden had secured no extension, and in fact the money was subject to be demanded at once. It was already "due season."

Worden neglected to pay anything, and in the fall of 1874 Dows threatened Stuart with foreclosure. The latter thereupon made terms with Pratt and quit-claimed to him.

As the pay-day was not postponed at all, and Dows had the right to call for the money at the time the mortgage was given, and the arrangement to permit Worden to obtain further extension only contemplated a renewed extension, which was impossible, because none whatever had been made to be renewed, the $2000 was immediately due at Stuart's election. The various circumstances conduct to this conclusion, and the papers are quite reconcilable with it.

The condition calls for payment, and not merely for indemnity. It is true that payment to complainant is not expressed in terms. But it is not only not negatived,—it is justly implied, as before stated, as the natural alternative after failure to pay him through payment on the mortgage.

This case more easily bears out this construction than do several of the cases cited bear out the construction there applied with confidence.

The other points suggested are not persuasive. Com-

42 MICH.—21.

plainant's right to the $2000 under the Worden mortgage was fixed, and the terms of the quit-claim to Pratt are full to show that complainant did not part with it or confer on Pratt any claim to it.  Pratt agreed with complainant to take care of the Dows mortgage as so much of the purchase price, and whatever he has paid has been paid at complainant's cost and in his stead, and not in the interest of defendants.

The result is that the decree should be affirmed with costs.

The other Justices concurred.