ROBINSON *v.* VILLAGE OF ST. CLAIR SHORES.

NOLAN *v.* SAME.

1. CONTRACTS—CONSIDERATION—COERCION.

Agreement, by contractor under contract to construct sewers and disposal plant and for sale of bonds therefor, that he assign all claim to village to fund deposited with it "as security for the performance on his part" of the contract, made upon extension of period within which bonds for project were to be sold and certificate of approval furnished as to their validity *held,* without consideration and entered into under circumstances amounting to coercion.

2. MUNICIPAL CORPORATIONS—SEWER CONTRACTS—RIGHT TO RETURN OF DEPOSIT—PERFORMANCE.

Contractor *held,* entitled to return of fund deposited by him as security for performance on his part of contracts for construction of sewers and disposal plant where village breached them by consenting to decree enjoining such construction and thereby prevented performance on his part.

Appeal from Macomb; Sprague (Victor D.), J., presiding. Submitted April 25, 1934. (Docket No. 164, Calendar No. 37,656.) Decided June 4, 1934.

Bill by Walter Robinson and others against Village of St. Clair Shores, a municipal corporation, Thomas D. Nolan and others to enjoin construction of sewers and for other relief. Cross-bill by defendant Nolan against defendant village and others for return of deposit and for other relief. Bill dismissed. Decree for cross-plaintiff. Cross-defendant village appeals. Affirmed.

*Colby, Berns & Costello* and *Christian Matthews,* for cross-plaintiff.

*Frederick McGraw,* for cross-defendant.

NELSON SHARPE, C. J.   The electors of the defendant village voted to construct a trunk-line sewer with the necessary sewage disposal plant, etc., therein.   Bids therefor, which should also include the purchase of the bonds to be issued for its payment, were advertised for, and that of Thomas D. Nolan for $1,478,974 for the construction of the sewer and $1,674,400 for the purchase of the bonds was accepted, and contracts pursuant thereto were entered into on September 19, 1930.

In one of the contracts Nolan agreed to purchase and pay for the bonds in cash as soon as they were ready for delivery and before commencing the construction work, and to deposit with the village treasurer a certified check for $50,000 "as security for the performance on his part of this contract."   He further agreed that in the event of his failure to perform "the damage to the village shall be the sum of $50,000 and said check shall be cashed in payment thereof."

The legality of the bonds was to be approved by a firm of attorneys in Detroit.

On September 16, 1930, three days before these contracts were entered into, a bill of complaint had been filed attacking the legality of the proceeding. It was dismissed in the circuit court, and the appeal taken to this court was dismissed on November 14, 1930.   While this suit was pending, Nolan had secured a purchaser for the entire bond issue, conditional, however, on delivery by November 8th.   On September 30th the attorneys approved the issue, but subject to the disposal of the pending suit.

On October 21, 1930, Nolan had arranged for the purchase of bonds to the amount of $956,800, and the commission of the village by resolution authorized delivery of the same to him on condition that he dispose of the balance within 60 days and increase his deposit to $75,000. He insisted that the money be kept intact so that it might be returned to the purchaser if the bonds were held to be invalid. No part of it was disbursed by the village, and it may be here noted that it was later returned to the purchaser, and the bonds delivered were returned to the village.

Conferences were thereafter held relative to the disposal of the balance of the issue, $717,600. A supplemental agreement was entered into on December 3, 1930, after the dismissal of the suit, which, after reciting the provisions of the contract of September 19th and stating that Nolan was not then in a position to immediately take delivery of and make payment for the balance of the issue, ratified the sale of the $956,800 and provided that the balance should be taken and paid for by February 2, 1931. It contained a provision for the retention of the deposit similar to that in the former contract, except that the amount was stated to be $75,000.

On January 22, 1931, the bill of complaint herein was filed by Walter Robinson and a number of other owners of real estate and taxpayers in the village, in which the relief sought was a decree declaring the contract entered into between the village and Nolan for the construction of the sewer and the bonds issued and to be issued in payment therefor to be illegal and void and enjoining any further proceeding relating thereto. An amended bill was filed on February 11, 1931. In its answer thereto, filed on March 2, 1931, the village denied many of the allegations therein, but in a paragraph thereof said:

"These defendants, further answering said amended bill of complaint, say that since the filing of the bill of complaint and the amended bill of complaint in this cause the time within which the said Thomas D. Nolan was to perform the contract for the purchase of said bonds has expired and the said Thomas D. Nolan has failed to perform said contract within said time and pay for said bonds and said contract is not now in force or effect."

The defendant Nolan in his answer alleged that all of the proceedings referred to in the bill were legal and valid, and prayed that the bill be dismissed. He later filed an amended answer, in which he again insisted that the plaintiffs were not entitled to relief, and by cross-bill annexed thereto he set up the proceedings under which he had deposited the $75,000 with the defendant, and prayed that, in the event the plaintiffs should obtain the relief sought, the defendant be decreed to return the same to him. To this the defendant made answer denying that he was entitled to such relief.

On April 11, 1932, the trial court, on motion of the attorney for the village and by consent of its counsel and its commissioners expressed in open court, after reciting that it appeared that the village had "definitely determined to abandon the said sewer project," ordered, adjudged and decreed that the village and its commissioners be enjoined "from taking any further proceedings towards the construction of said sewer, or towards the sale of the bonds, issued in connection therewith," and that the bill of complaint be dismissed "without any finding as to the validity of said sewer project." This decree was not consented to by counsel for Nolan, but he took no appeal therefrom.

On February 2d, the date to which the time had been extended for the purchase of the balance of

the bonds by the supplemental agreement of December 3d, Nolan presented a communication to the commission which was then in session in which he referred to the suit then pending affecting the legality of the bonds, and accompanied it with a proposed agreement by the terms of which the village would deliver the bonds to a bank and that he would at the same time deliver to it the balance of the purchase price, both to be held by the bank in escrow until the village should deliver to it a certificate of non-litigation and approval of the issue by the firm of attorneys above referred to, and, if the issue should be held to be invalid or illegal, to then return the bonds to the village and the money deposited to the purchasers. There was much discussion at this meeting. The village attorney advised the commission not to execute the agreement. A tender of the amounts necessary to pay for the balance of the issue, conditional on the furnishing of such certificate was then made and rejected on the advice of the attorney. The offer was then made to take the bonds if the commission would pass a resolution agreeing to repurchase them in the event that they were declared invalid, and the attorney answered: "No, you take the bonds as they are and you take your chances on getting your money back." He then prepared an agreement, and, after some changes were made in it, it was executed by the village officials and by Nolan. It extended the time for payment of the balance of the issue to February 11th. It contains the following provision:

"The contractor, with full knowledge that litigation involving and attacking the validity of said bonds is now pending in the circuit court for the county of Macomb, in chancery, and that other litigation may be started, and that restraining orders, injunctions, decrees, or other legal process may pre-

vent the village from making delivery of said bonds under this contract or declare said bonds invalid, does hereby agree that his obligation to take said bonds under said contract, as modified and hereunder, shall be and is absolute, notwithstanding said litigation, or any future litigation, injunctions, restraining orders, decrees, or other legal process which may be prosecuted, started, made or issued involving said bonds and does hereby assign, and set over to the village all right, title and/or interest which he, the said contractor, may have in and to the sum of $75,000 heretofore paid on account of the purchase price of said bonds, excepting and reserving to himself only the right to have said sum credited on the purchase price of the last $75,000 of said bonds. In the event the village is prevented from delivering said bonds, or any portion thereof, to the contractor by reason of any legal process, or otherwise, said contractor does hereby release all claim or claims of damages or the return of said sum of $75,000 by reason of the failure of the village to make such delivery. (In the event bonds are held invalid that the entire purchase price is to be returned to the purchasers thereof, including the $75,000 above mentioned.) It is expressly understood that said contract of September 19, 1930, as modified by agreement of December 3, 1930, is in full force and effect, except as modified by this agreement.''

The sentence in the parentheses was inserted at the insistence of Nolan's attorney. The provision in the decree dismissing the bill that it was ''without any finding as to the validity of said sewer project'' was doubtless inserted at the request of counsel for the village to defeat any claim the plaintiffs might make thereunder.

The suit was still pending on February 11th, and without a certificate from the attorneys Nolan was unable to dispose of and make payment for the bal-

ance of the issue. Nolan's cross-bill, wherein he sought the return of the $75,000 deposited by him with the village, came on to be heard. After the submission of proofs the court found "that the village did not fulfill its part of the contract and that Nolan was prevented from performing by matters justifying non-performance," and that the provision in the contract for the forfeiture of the $75,000 was against public policy and void. He also found that if Nolan be held to be in default the deposit was in the nature of a penalty and not liquidated damages, and that no actual damages for the breach were sustained by the defendant. A decree was entered ordering the village to pay to Nolan the sum of $75,000 and some interest thereon, from which this appeal has been taken.

The contracts first entered into were unusual. The village officials knew that Nolan was not engaged in the business of purchasing bonds, and that his only purpose in agreeing to do so was conditional on his securing the construction contract. They were chargeable with knowledge that the amount of the issue was so large that it could be financed only by men of wealth or banks or trust companies. At that time a suit was pending attacking the validity of the proceedings. Prudence on the part of the officials as well as Nolan would seemingly have suggested that no binding contract should be entered into until it was disposed of. The impropriety of doing so is particularly apparent from the provision in the contract for the purchase of the bonds that they should be approved as to legality by a firm of well-known attorneys, and their knowledge that such approval could not be obtained with the litigation pending. The only explanation is that the village officials desired to at once secure a binding contract with Nolan to take the bonds and

he was also anxious at that time to secure the construction contract. The circumstances then existing must be borne in mind in the consideration of the after proceedings. *Kellogg* v. *Kellogg Toasted Corn Flake Co.*, 212 Mich. 95; *Stuart* v. *Worden,* 42 Mich. 154.

The suit was dismissed on November 14th. Up to that time there had been no default on the part of Nolan. No certificate of approval had been furnished, and it may be here stated that Mr. Spaulding of the firm of attorneys who was to furnish it, and who had charge of it, testified, "I don't think at any time subsequent to September 19, 1930, that I gave an unqualified opinion as to the legality of the entire bond issue."

By the contract of December 3d Nolan's time to purchase was extended to February 2d. At that time the bill of complaint herein had been filed. No approval could then be obtained. The only fair and reasonable solution of the difficulties then present was the acceptance by the village of the offer made by Nolan in his letter and proposed contract to place the bonds and the purchase price thereof in escrow in a bank to await the determination of the pending suit. But the village at that time had $75,000 of Nolan's money in its possession, and, acting on the advice of its attorney, the commission insisted on his agreeing to the provision inserted in the contract of that date heretofore quoted. We agree with the trial court that he was coerced into entering into it and that it was unenforceable and void and no defense to his right to recover the moneys deposited by him with the village treasurer and for which he received no consideration.

Defendant's counsel insist that if the contract and bonds were void on grounds of public policy Nolan may not recover. He is not here seeking to

recover damages growing out of these contracts. The defendant has breached them by its consent to the decree entered in this case wherein the plaintiffs' bill was dismissed. It has in its possession $75,000 of money deposited by Nolan as security that he would perform. That he cannot now do, and he is entitled to its return.

Other questions are discussed, but in our opinion they do not merit consideration. The decree is affirmed, with costs to appellee.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.