CHARLES DENGLER, APPELLANT, V. FRANK FOWLER ET AL., APPELLEES.

FILED NOVEMBER 12, 1913.   No. 17,373.

1. **Vendor and Purchaser:** CONTRACT: EVIDENCE. By exchange of letters in due course of mail, the writers may enter into a valid contract for the sale of land.

2. **Landlord and Tenant:** LEASES: OPTION TO PURCHASE. In a written

land lease, an option granting to lessee, upon expiration of the stipulated term, the right to purchase the land upon definite terms, is an enforceable contract.

3. ———: ———: ———: Consideration. A five-year land lease may be modified after its execution, so as to grant to lessee an enforceable option, upon expiration of the lease, to purchase the land on definite terms, and for that purpose the rentals stipulated in the original lease and the subsequent promise to pay the purchase price are valid considerations.

4. ———: Possession as Notice. The possession of a tenant is not only notice to the world of his rights as lessee, but is notice of all other interests of which inquiry would elicit knowledge.

5. Vendor and Purchaser: Rights of Lessee. A purchaser of land, in possession of a tenant who was not asked about his interests in the demised premises, is bound by all of the equities enforceable by the lessee against the vendor.

6. ———: ———. The notice imparted by a recorded lease for a five-year term does not put an end to inquiry as to the rights of a tenant who, for a long period of years, has been in possession of the demised premises, where he is conducting a store in buildings erected at his own expense.

7. ———: ———. Purchasers of land, with notice that a lessee in possession has an option to buy the demised premises at the expiration of his lease, may be required to perform lessor's agreement to convey the lot to lessee.

Appeal from the district court for Dodge county: Conrad Hollenbeck, Judge. *Reversed with directions.*

*Burr, Greene & Greene, F. Dolezal* and *George L. Loomis,* for appellant.

*Courtright & Sidner, contra.*

Rose, J.

This is a suit for specific performance of a contract obligating Martha E. Green, a resident of Utica, New York, to sell and convey to plaintiff a lot in Fremont, Nebraska. As her tenant he was in possession of the lot for many years, where he conducted a retail furniture business in a building erected at his own expense. The last

lease executed by them is in writing, is dated May 14, 1905, and is duly recorded. It covered the period from June 1, 1905, to June 1, 1910, required plaintiff to pay to lessor quarterly an annual rental of $150, and prescribed conditions under which he was permitted to remove his improvements. He is still in possession. He pleads in his petition that, by exchange of letters soon after the execution of this lease, he and lessor agreed that, upon expiration of the five-year term, she should sell and convey the demised property to him for $3,000, one-third of the purchase price to be paid in cash, and the balance to be secured by a mortgage on the premises, to be payable in 10 years, and to draw interest at the rate of 6 per cent. per annum. Plaintiff further pleads that, with knowledge of his rights, Frank Fowler, defendant, procured from Martha E. Green, lessor, April 12, 1910, in the name of his wife, Jessie Fowler, defendant, a deed to the leased lot, and that grantee holds the title subject to plaintiff's right of purchase. Defendants denied the existence of the agreement on which plaintiff relies, alleged they bought the lot in good faith from lessor for $3,600, asked to have grantee's title quieted, and demanded damages on account of the failure of plaintiff to surrender possession June 1, 1910. The findings of the trial court were in favor of defendants on all of the issues raised by the answer, and from a judgment in their favor plaintiff has appealed.

Did lessor and plaintiff make the agreement pleaded in the petition? Was there a valid consideration? Did defendants purchase the lot with notice of plaintiff's rights? These questions are to be determined from the evidence. Plaintiff insists that he proved his contract by the exchange of letters in due course of mail. A binding agreement may be thus established. *Helwig v. Aulabaugh,* 83 Neb. 542. Some of the correspondence is missing, but plaintiff testified orally to the contents of letters not produced. In the testimony the right asserted by plaintiff is frequently called an "option," and defendants suggest that the use of such a term is an intimation that no enforceable

NEBRASKA REPORTS. [VOL. 94

contract was made. The suggestion, however, is not important. In equity the term employed by a party to describe a transaction is not controlling. The inquiry should be directed to what the parties agreed to do. Plaintiff testified, without contradiction, that his transactions with lessor were limited to the lot in controversy. That their correspondence related thereto will be taken for granted, since there is nothing to the contrary in the record. Plaintiff had been transacting business in the name of his wife, M. L. Dengler, and from all of the evidence it is clear that letters addressed to her in answer to his own should be considered a part of his correspondence. For 25 years lessor owned the lot, while plaintiff occupied it with his buildings and retail furniture store. When her Fremont agent presented to him for his signature a lease covering the period from June 1, 1905, to June 1, 1910, it contained a provision requiring him to vacate the premises upon 6 months' notice, in case of a sale. The evidence is conclusive that he refused to make the lease on such terms, and that he signed it after this provision was erased. On the witness-stand he said that in May, 1905, after execution of the lease, he sent a letter to lessor at her proper address in Utica, New York, containing, in substance, these words: "Have seen in lease that you want to sell the lot. Will you please give me best terms and price on the same?" In reply he received a letter directed to M. L. Dengler. It was dated May 24, 1905, and in part reads thus: "In reply to your letter would say that the best that I can do on a sale is $3,000, you to pay $1,000 down, and the other $2,000 to be covered by a mortgage. I will pay for the selling of the property. Have written Courtright & Sidner this day." The original letter is in evidence. The partners mentioned were lessor's agents for the purposes of lease and sale. She gave her deposition. It shows that she directed the writing of the letter described. Plaintiff says he made the following reply thereto, but did not keep a copy of it: "I have not got any money just now to buy lot, but will buy same after expiration of my lease. Please

give me best price and terms on same." He testified this was answered June 13, 1905, as follows, in a lost letter signed by lessor and received by him: "I will sell you lot for $3,000, $1,000 paid down, and $2,000 payable in ten years at 6 per cent. interest, and I will pay commission for selling it." He further stated that in a letter properly addressed to her and posted, he afterward wrote: "I hereby accept your offer for lot." Two witnesses testified they had seen lessor's letter containing the option which permitted plaintiff to buy the lot at the expiration of his lease for $3,000, one-third to be paid in cash, and the balance to be secured by mortgage. One of the witnesses gave the rate of interest on the deferred payment at 6 per cent. and the other at 5 per cent. To others plaintiff asserted the existence of this option before the time to exercise it had expired. While lessor contradicted testimony that the option had been given and accepted, the more convincing proofs indicate that plaintiff told the truth. His failure to produce the letter dated June 13, 1905, does not discredit his testimony, when his peculiarities and the conditions surrounding the negotiations are considered. It is undisputed that nearly five years before his lease expired he began negotiations for a longer occupancy, when he learned the lot was for sale. His lessor made him an offer. Why should he abandon his purpose before its consummation? He evidently thought a change in location would ruin his business. The terms of the option were more profitable to lessor than the terms of the lease. His negotiations were consistent with his business interests and purposes. The lot increased in value. Defendants offered $3,600 for it. There was a temptation for lessor to avoid a sale to plaintiff. When the whole case is considered, her testimony is less convincing than that adduced on behalf of plaintiff. The finding is that the agreement of lessor to sell the lot to plaintiff was proved as pleaded. It is definite in its terms. Plaintiff tenders full performance on his part. Should the contract be enforced? It is argued that the offer or

43

option is not enforceable, and that there was no consideration. The contract proved by the correspondence, when considered with all of the circumstances disclosed by the evidence, amounts to a modification of the lease, so as to permit lessee to buy the lot upon expiration of the stipulated term. Considered as an option, the agreement is enforceable. The quarterly rental and the promise to pay the purchase price are valid considerations for the modification. *Knerr v. Bradley,* 105 Pa. St. 190; *Bowman v. Wright,* 65 Neb. 661. Considered as an independent contract, the result is the same.

Defendants were not innocent purchasers. They knew before they accepted lessor's deed that plaintiff had been in possession of the lot for many years, and that in buildings which he had erected he was conducting a store on the premises. With such notice, they were bound to inquire about his rights. *McParland v. Peters,* 87 Neb. 829. His possession was notice to the world of his interests in the lot. *Draper v. Taylor,* 58 Neb. 787; *Best v. Zutavern,* 53 Neb. 604; *Scharman v. Scharman,* 38 Neb. 39; *Uhl v. May,* 5 Neb. 157. Defendants argue that the possession of plaintiff does not charge them with notice of his option, because it is not embodied in his recorded lease, and is not to be found in any other public record. This argument seems to have support in an isolated case. *Hamilton v. Ingram,* 13 Tex. Civ. App. 604. The decisons generally, however, announce a contrary doctrine. The possession of a tenant is not only notice to the world of his rights as lessee, but is notice of all other interests of which inquiry would elicit knowledge. A purchaser of land, in possession of a lessee who was not asked about his interests in the demised premises, is bound by all of the equities enforceable by the lessee against the vendor. The notice imparted by a recorded lease for a five-year term does not put an end to inquiry as to the rights of a tenant who, for a long period of years, has been in possession of the demised premises, where he is conducting a store in buildings erected at his own expense. Cases announcing

these principles of·law and the reasons on which they are based are collected in an editorial note to *Garbutt & Donovan v. Mayo,* 13 L. R. A. n. s. 58, 98 (128 Ga. 269). The doctrine of·the cases generally on this subject is in harmony with former rulings of this court. *Smith v. Gibson,* 25 Neb. 511; *Friedlander v. Ryder,* 30 Neb. 783; *Kahre v. Rundle,* 38 Neb. 315. Having accepted title with notice of the rights of plaintiff, defendants should be required to perform lessor's agreement to convey the lot to him.

The judgment of the district court is therefore reversed, with directions to enter a decree in favor of plaintiff for specific performance at the costs of defendants in both courts.

REVERSED.