HULL *v.* GAFILL OIL CO.

VENDOR AND PURCHASER — CONSTRUCTIVE NOTICE — LANDLORD AND TENANT—RECORDED LEASE.·
> In action by purchaser of leased premises against lessee in possession at time of purchase for rent due under written lease, holding of trial court that plaintiff was entitled to rely on recorded lease, and was not chargeable with constructive notice of unrecorded memorandum agreement inconsistent therewith, is affirmed, on appeal, by equally divided court.

Appeal from Berrien; White (Charles E.), J. Submitted April 7, 1933. (Docket No. 55, Calendar No. 37,068.) Decided June 5, 1933.

Assumpsit in justice's court by May Graham Hull, assignee, against Gafill Oil Company, a corporation, for sums due under a lease of real estate. Judgment for plaintiff. Defendant appealed to circuit court. Judgment for plaintiff. Defendant appeals. Affirmed, by an equally divided court.

*John J. Sterling* and *Webster Sterling,* for plaintiff.

*Gore & Harvey,* for defendant.

BUTZEL, J.    On July 15, 1922, defendant Gafill Oil Company, as lessee, entered into a written lease with A. S. Lindenfeld and wife, lessors, for property in Benton Harbor adjoining the right of way of the C. C. C. & St. Louis Railway.    The lease was for a term of five years, with the option of three successive renewals of five years each at increased rentals. Defendant planned the erection of a bulkhead reservoir and oil filling station on the premises.    Shortly after the execution of the lease, it was discovered that the premises were not large enough to accommodate the needs of defendant unless it also secured an adjoining strip of land belonging to the railroad company.    Lindenfeld agreed to bear any expense to which defendant might be put during the life of the lease in obtaining the use of this strip of land, and on August 4, 1922, gave defendant a memorandum, reading as follows:

"Benton Harbor, Mich., Aug. 4/22.
"I will agree to refund all expenses during the life of the lease given by me to the Gafill Oil Co. of So. Bend which they incur with the strip of land leased from the Big Four Railroad Co.
"(Sgd.)    A. S. LINDENFELD."

Defendant recorded its lease without the memorandum, and later exercised its first option of renewal.

Defendant was obliged to pay the sum of $75 a year to the railroad company for the use of its land, and in turn it deducted this amount from the payments due the lessors, without any objection on their

part. Such deductions were made for seven consecutive years, during five of which the Lindenfelds owned the property. Defendants remained in continuous possession of the property and made extensive improvements. On September 24, 1928, Lindenfeld and wife sold the property to May Graham Hull. Before concluding the purchase, her husband obtained an abstract of title to the property. It disclosed the written lease with defendant but not the modification contained in the memorandum hereinbefore set forth. Plaintiff objected to the deductions of $75 per year made by defendant after she had acquired the property, and brought the instant suit to recover these amounts.

The trial judge found in plaintiff's favor solely upon the ground that, as the possession of defendant appeared to be consistent with the instrument it had caused to be recorded, possession was not constructive notice of any collateral or subsequent unrecorded agreement under which defendant claimed rights inconsistent with the recorded lease. The correctness of this ruling is the sole question raised on appeal. The trial judge adopted the rule laid down in Pomeroy on Equitable Jurisprudence (4th Ed.), § 616, from which he quoted as follows:

"The decisions may be regarded as agreeing upon the conclusion, which also seems to be in perfect harmony with sound principle, that where a title under which the occupant holds has been put on record and his possession is consistent with what thus appears of record, it shall not be constructive notice of any additional or different title or interest to a purchaser who has relied upon the record and has had no actual notice beyond what is thereby disclosed." .

This rule has been generally followed in the United States and there are many cases in this State

that support it.   See *Hammond* v. *Paxton,* 58 Mich.
393; *Reynolds* v. *Ruckman,* 35 Mich. 80; *Hooper* v.
*DeVries,* 115 Mich. 231.   However, in the case of
*Russell* v. *Sweezey,* 22 Mich. 235, this court refused
to apply the rule in a case where defendant in pos-
session held both by virtue of a recorded tax title
and an unrecorded patent.   Plaintiff purchased the
property without actual knowledge of defendant's
unrecorded patent, although possession of the latter
was open, visible and continuous for a period begin-
ning long before plaintiff purchased the property.
Plaintiff invoked the rule as hereinbefore stated.
Mr. Justice GRAVES, however, in speaking for the
court, said:

"We think this view wholly inadmissible, and
have no hesitation in saying that the actual public
and visible possession of Sweezey for a period be-
ginning some time before and continuing up to the
grant to Russell, was of itself notice to the latter
of all of Sweezey's right, interest, claim, and title,
whether of record or otherwise, or whether founded
on tax sales or deeds, or on agreements, or deeds of
any kind."

We are fully in accord with the rule laid down by
Pomeroy as hereinbefore quoted.   We believe, how-
ever, that the ruling should not be so rigidly adhered
to as not to permit of an exception when the land-
lord-tenant relationship is involved, due to the great
frequency with which collateral or subsequent agree-
ments are entered into in forms that do not meet
the requirements of recording laws.   Agreements
modifying the terms of written leases are extremely
common.   Frequently, alterations, improvements,
and repairs have been made by the lessee in consid-
eration of a reduction in the rent, extension of the
term, or some other change or modification of the
lease.   Owing to present economic conditions, many

concessions have been made by lessors, resulting in partial abandonment of the terms of their written and recorded leases. Such concessions have been made orally as well as in writing, and frequently are neither witnessed nor acknowledged.

In the instant case, plaintiff knew that defendant was in possession, and that there were valuable improvements on the premises, specially adapted to defendant's uses. It was no hardship for her to inquire as to whether there were any other modifications or changes in the lease. Ordinary business prudence should have prompted her to do so. Although the rule as quoted by the trial court from Pomeroy and followed by the great weight of authority is the correct one, an exception should be made in the case of leases where the lessee is in open and visible possession of improved property. Prospective purchasers should inquire of the tenant in possession as to whether there have been any modifications of the recorded lease or any other collateral or subsequent agreements affecting it. Notwithstanding much authority to the contrary, we believe that the correct rule is set forth in the case of *Dengler* v. *Fowler*, 94 Neb. 621 (143 N. W. 944), wherein Dengler was lessee under a recorded lease for a term of five years and secured an option to purchase the property. The purchaser of the property relied upon the record and was unaware of the existence of the option when he made his purchase. The court, in holding that possession was sufficient notice, said:

"Defendants were not innocent purchasers. They knew before they accepted lessor's deed that plaintiff had been in possession of the lot for many years, and that in buildings which he had erected he was conducting a store on the premises. * * * His possession was notice to the world of his interests in

the lot. * * * The notice imparted by a recorded lease for a five-year term does not put an end to inquiry as to the rights of a tenant who, for a long period of years, has been in possession of the demised premises, where he is conducting a store in buildings erected at his own expense.''

To like effect are *Collum* v. *Sanger Bros.*, 98 Tex. 162 (82 S. W. 459); *Toland* v. *Corey*, 6 Utah, 392 (24 Pac. 190); *Ayres* v. *Jack*, 7 Utah, 249 (26 Pac. 300). Possession is constructive notice of the rights of tenants in possession claiming under a valid collateral or subsequent unrecorded agreement, despite the existence of a prior, recorded lease. The trial court should have found in favor of defendant.

The judgment should be reversed, with costs to defendant, and the case remanded to the lower court with instructions to render a judgment in favor of defendant.

McDONALD, C. J., and CLARK and FEAD, JJ., concurred with BUTZEL, J.

SHARPE, J. The lease involved in this case was executed on July 15, 1922. It was offered in evidence and marked Exhibit ''C.'' In the record, prepared by defendant's attorneys, it is stated that—

''Attached to said Exhibit C, and a part thereof is the following, on the stationery of the Gafill Oil Company, South Bend, Ind.:

'' 'Benton Harbor, Mich.
'' 'Aug. 4/22.
'' 'I will agree to refund all expenses during the life of the lease given by me to the Gafill Oil Co. of So. Bend which they incur with the strip of land leased from the Big Four Railroad Co.
'' 'A. S. LINDENFELD.' ''

The lease was not recorded until September 25, 1922. The above writing attached thereto does not appear in the record. Under the terms of the lease

the defendant was entitled to a renewal thereof at the expiration of each five-year period at an advanced rental. Under the supplemental agreement the defendant deducted the sum of $75 each year, paid by it to the railroad company for the use of its land. When renewal was had at the end of the first five-year period on July 15, 1927, Lindenfeld testified that it was understood that no further deductions should be made. This was denied by defendant. It claims that a deduction was made of the September rent of that year. The monthly rental was then $75.

The plaintiff purchased the property on September 24, 1928. The lease was then assigned to her. An abstract of the title was furnished. It disclosed the lease to defendant, and Lindenfeld's copy of it was examined by plaintiff's husband, William H. Hull, who was then acting for her. On October 1, 1928, the plaintiff gave defendant a written notice of the transfer of the lease to her, and requested that all checks for rent thereafter should be made payable to her husband, at an address stated therein. Mr. Hull testified that no deduction of rent thereafter was claimed by the defendant for the year 1928 nor for 1929, and there was no denial thereof.

The applicable rule as stated by Mr. Pomeroy, quoted by Mr. Justice BUTZEL, is supported by the great weight of authority. It is stated in 27 R. C. L. p. 723, as follows:

"As a general rule where a person occupies premises, and the record shows a conveyance under which he would be entitled to the possession, his possession will be referred to the record title, and a subsequent purchaser will not be charged by it with notice of any other undisclosed title or equity which the occupant may have. The possession is a matter tending to excite inquiry, but the fact that the occupant has placed upon the public records written evidence of

his right, with the terms of which his possession is consistent, arrests inquiry at that point, and reasonably informs the purchaser that he may rest upon the knowledge thus obtained."

While I am in accord with the holding of Mr. Justice BUTZEL that this rule should not be so rigidly enforced in all cases as to work a gross injustice to tenants, I do not think the facts here presented should be treated as creating an exception thereto. Had not defendant recorded its lease, the plaintiff would have been chargeable with notice of its terms, as defendant was in possession of the premises. The defendant knew at the time it recorded it, and thus gave notice of its contents, that it did not fully express the terms under which it took and held possession as tenant. Within a few days after the assignment of the lease to plaintiff, she gave defendant written notice thereof and requested that the rent be thereafter paid to her husband. It was then apparent to it that the plaintiff was relying on the terms of the lease as it appeared of record. And yet it not only neglected to call plaintiff's attention to the fact that under the written undertaking of her assignor it was entitled to a deduction of one month's rent in each year, but it paid the rent in full for the balance of the year 1928 and for the entire year 1929, without questioning plaintiff's right thereto.

Under the holding of Mr. Justice BUTZEL, the burden is cast upon the plaintiff of litigating the question in dispute between Lindenfeld and the defendant as to whether the right to deduct the rent payable to the railroad company ceased, by agreement, at the end of the first five-year period.

In my opinion, the judgment should be affirmed.

POTTER, NORTH, and WIEST, JJ., concurred with SHARPE, J.