In re FLETCHER OIL CO., INC., Debtor.

FLETCHER OIL CO., INC., Plaintiff,

v.

ELM LAWN CEMETERY COMPANY, a Michigan Corporation, Elm Lawn Cemetery Perpetual Care Fund, a Trust Fund, Frederick B. Fletcher, and Richard B. Fletcher, Trustees, Defendants.

Bankruptcy No. 88–09679.
Adv. No. 89–9081.

United States Bankruptcy Court,
E.D. Michigan, N.D.

Aug. 16, 1990.

D. Keith Birchler, Bay City, Mich., for plaintiff.

Michael C. Reinert, Saginaw, Mich., for defendants.

## MEMORANDUM OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ARTHUR J. SPECTOR, Bankruptcy Judge.

### Facts

The property which is the subject of this dispute was leased by Fletcher Oil Co., Inc.,[1] the owner of record, to Second National Bank ("SNB") on August 5, 1977. The lease was for a 15–year term and included options for renewal. SNB built and occupies a branch office on the property. On August 2, 1982, the Debtor sold the property by land contract to the Elm Lawn Cemetery Perpetual Care Fund ("Fund"). The Fund had been established by the Elm Lawn Cemetery Company ("Cemetery Company"). Frederick B. Fletcher and Richard B. Fletcher (collectively, the "Fletchers") were each shareholders, officers and directors of both the Debtor and the Cemetery Company, and served as trustees of the Fund. The Debtor deeded the property to the Fund on August 22, 1984, after receiving payment of the $170,000 purchase price. The deed was executed on behalf of the Debtor by the Fletchers and "delivered" to themselves in their capacity as Fund trustees. SNB was advised of this conveyance, and has been making monthly

---

1. The company will be referred to as "Debtor" when pre-petition actions are discussed and as "Plaintiff" when its role as "trustee" of the estate and as litigant in this adversary proceeding is addressed.

rental payments to the Fund since August of 1982. Neither the lease, land contract nor deed were recorded.

On September 13, 1988, the Debtor filed for bankruptcy under Chapter 11. Shortly thereafter, the Plaintiff commenced this adversary proceeding against the Cemetery Company, the Fund and the Fletchers, as trustees of the Fund.[2] Count I of the complaint seeks to avoid the unrecorded conveyance from the Debtor to the Fund pursuant to 11 U.S.C. § 544(a)(3). The Plaintiff moved for summary judgment as to this count, and the Cemetery Company and the Fund (collectively, the "Defendants") responded with their own motion for summary judgment. The Fletchers each opposed the Plaintiff's motion for summary judgment and "adopted" the Defendants' counter-motion for summary judgment. The Court has jurisdiction over this action, 28 U.S.C. § 1334(b), and it is a core proceeding. 28 U.S.C. § 157(b)(2)(K), (O).

## DISCUSSION

■ Section 544(a) provides that:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . . .

(3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to

be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a). Pursuant to § 1107(a), this "strong-arm" power of the trustee is also vested in the Plaintiff as debtor in possession. We must therefore decide whether the Plaintiff may use this power to set aside the conveyance of the property to the Fund. The answer to this question turns on whether a subsequent purchaser of the property could have attained "bona fide purchaser" status under Michigan law.[3]

■ Michigan has a race-notice statute which provides in pertinent part that:

Every conveyance of real estate ... which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, ... whose conveyance shall be first duly recorded.

Mich.Comp.Laws § 565.29. Case law in Michigan, however, clearly holds that a subsequent purchaser is not protected under § 565.29 as against those interests of which he is held to have constructive notice.[4] See, e.g., Deputy Comm'r v. O. & A. Elec. Coop., 332 Mich. 713, 716–17, 52 N.W.2d 565 (1952). The Fund argues that a subsequent purchaser would have been charged with constructive notice as to the Fund's interest by virtue of SNB's open possession of the property. The Plaintiff concedes that SNB's possession would have

---

**2.** The complaint also named a third trustee of the fund, Marie B. Fletcher, as a defendant. The answer filed on behalf of the Cemetery Company and the Fund included counterclaims against the Plaintiff as well as cross-claims against the Fletchers, Marie B. Fletcher, and the estate of R.H. Fletcher, Jr. The answer identified the Elm Lawn Cemetery Flower Endowment Fund as a third-party plaintiff which joined in the various claims made by the Cemetery Company and the Fund. On May 9, 1990, the Court dismissed the counterclaims against the Plaintiff for failure to state a claim upon which relief can be granted. For reasons not pertinent to this opinion, the Court dismissed Marie B. Fletcher from this proceeding on May 31, 1990.

**3.** It is commonly stated that § 544(a)(3) confers upon the debtor, as debtor in possession, the rights of a hypothetical bona fide purchaser. See, e.g., In re Ryan, 851 F.2d 502, 505 (1st Cir.1988). This is only true, however, if and to the extent that a purchaser could have acquired such rights under applicable state law. See Havee v. Belk, 775 F.2d 1209, 1218 (4th Cir.1985).

**4.** Although § 544(a)(3) states that the trustee's knowledge is irrelevant, this language does not negate the effect of constructive notice under applicable state law. In re Probasco, 839 F.2d 1352, 1354–55 (9th Cir.1988).

served as constructive notice as to *SNB's* interest in the property, but argues that it would not have constituted constructive notice of the *Fund's* interest, and it is only the Fund's interest which the Plaintiff seeks to prime.

■ The Plaintiff cites no authority for the proposition that open possession may only serve as constructive notice of the rights of the party actually in possession. It relies instead upon policy arguments as to why this conclusion is appropriate. We have no occasion to address the merits of these policy considerations, however, as we believe Michigan law clearly holds that open possession may put a subsequent purchaser on notice regarding the rights of someone other than the possessor.

■ In *Corey v. Smalley,* 106 Mich. 257, 64 N.W. 13 (1895), Corey sued to enjoin a sale pursuant to a levy of execution which Smalley had caused to be made on the property in question. The record owner of the property was Berlin, the execution debtor. Prior to the levy, Berlin had sold the property by an unrecorded land contract to Charlton, who in turn rented the premises to Andrich pursuant to an unrecorded lease. At the time of the levy, Andrich had been occupying the property for approximately 10 days. Subsequent to the levy, Charlton assigned his interest in the land contract to Corey.

The court noted that

the filing of a proper notice of levy with the register of deeds shall be a lien, etc., and that such lien "shall, from the filing of such notice, be valid against all prior grantees and mortgagees of whose claims the party interested shall not have actual nor constructive notice."

106 Mich. at 260, 64 N.W. 13 (quoting Pub. Acts 1889, Act No. 227), but held that Smalley could not avail himself of this statute. It reasoned that

[Corey's] assignor, Charlton, was in actual possession of the premises, *either personally or by tenant,* at the time of the levy. The premises consisted of a store, and the possession was plain, and was sufficient to have put [Smalley] upon inquiry. One who purchases land occupied

by another than the grantor is chargeable with notice of the rights of the occupant. Possession of land by a contract purchaser is constructive notice of his rights.

. . . . .

[I]t is plain that the statute ... will not justify the claim that the levy constituted a lien as against the rights of Corey.

*Id.* (Citations omitted; emphasis added). The court thus appears to have regarded possession by the tenant as functionally equivalent to possession by the landlord. Applying the rationale in *Corey* to the facts of this case, open possession of the property by SNB (the tenant) is tantamount to possession by the Fund (its landlord and, as in *Corey,* vendee under an unrecorded land contract).

Another Michigan Supreme Court case on point is *Spring v. Raymond,* 134 Mich. 84, 95 N.W. 1003 (1903). Raymond caused a levy to be made on property which was owned by Spring under an unrecorded deed from Shaw, the execution debtor. The property was occupied by a tenant who had rented from Shaw and continued to rent from Spring following the transfer. The land was sold to Raymond following the levy, and Spring sued to annul the sale. Raymond claimed that his levy took priority over the unrecorded deed to Spring, citing his lack of "actual or constructive notice, at the time of the levy, of the existence of the deed." 134 Mich. at 85, 95 N.W. 1003. The court rejected this argument, based in part on its conclusion that "an inquiry of the tenant would undoubtedly have revealed the fact that Shaw had transferred the property to [Spring], for there is reliable evidence to show that the tenant knew of the transfer, and, as he expressed it, he had a 'new boss.'" *Id.* at 86, 95 N.W. 1003. The court thus concluded that possession by a tenant served as constructive notice of the rights of the landlord since an inquiry directed to the tenant would have revealed the landlord's interest in the property. As will be discussed, the Fund argues that an appropriate inquiry of SNB would likewise have

disclosed that SNB had a "new boss," namely, the Fund.

The decisions in *Corey* and *Spring* are consistent with the premise that constructive notice applies to such facts as "a reasonably diligent inquiry would have disclosed," *Deputy Comm'r v. O. & A. Elec. Coop.*, 332 Mich. at 716, 52 N.W.2d 565,[5] and demonstrate that possession of property may constitute constructive notice of the rights of someone other than the person in possession. We must now decide whether the facts of this case warrant the conclusion that a subsequent purchaser would have been chargeable with notice of the Fund's interest. This question can be decided on a motion for summary judgment only if we conclude that, viewing the evidence in the light most favorable to the party opposing the motion, the pleadings reveal no genuine issue of material fact to be resolved by the factfinder. *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir.1990).

 The Fund has presented evidence, in the form of an affidavit from SNB's president, that SNB would have advised a prospective purchaser that the Fund was its landlord and owner of the property. The Plaintiff has offered no evidence to contradict this contention, and we conclude that an inquiry directed to appropriate officials of SNB would have disclosed the Fund's interest in the property.

The next issue is whether "reasonably diligent inquiry" by a prospective purchaser would necessarily have included questions directed to SNB. The Plaintiff suggests that a hypothetical purchaser could have fulfilled his obligation to make reasonable inquiry by questioning the seller only, citing *Converse v. Blumrich*, 14

Mich. 108 (1866).[6] However, that case does not support the Plaintiff's position.

The property which was the subject of dispute in *Converse* was part of a larger tract of land that the American Baptist Missionary Union ("Union") had sold by land contract to Johnson and Coggeshall.[7] Johnson and Coggeshall then subdivided the land, and Coggeshall sold three parcels to Blumrich by land contract. Before Blumrich had made full payment on these land contracts, Johnson and Coggeshall assigned their vendees' interest in the land contract with Union to Converse. In connection with these assignments, Converse signed a memorandum in which he agreed that, upon receipt by Converse of the balance owing on various land contracts relating to individual parcels of the property, Converse would execute a quit claim deed in favor of Coggeshall for such parcels. The parcels sold to Blumrich were among those listed in the memorandum and, unbeknownst to Blumrich, several of his land contract payments were subsequently forwarded by Coggeshall to Converse. After receiving the assignments from Johnson and Coggeshall, Converse obtained a deed to the property from Union. Converse advised Blumrich, who was unaware of the memorandum Converse had signed, that he was not bound by the terms of Blumrich's land contracts with Coggeshall and that Blumrich would have to purchase the parcels from Converse at a price to be negotiated, without credit for payments made by Blumrich on his land contracts. Blumrich resisted this demand for some time, but eventually acquiesced and gave Converse a mortgage on the parcels to secure their purchase. Blumrich subsequently defaulted on his payments to Converse, and Converse sued to foreclose the mortgage. The defendants, who were Blumrich's widow

---

5. *See also Kastle v. Clemons*, 330 Mich. 28, 31, 46 N.W.2d 450 (1951) ("When a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed.").

6. *Converse* is often cited in error as commencing at page 109 of volume 14 of the Michigan Reports.

7. The court identified Thomas J. Coggeshall, George Coggeshall and Nathaniel Coggeshall as each having a role in the various transactions involving the property. Because the respective rights of these individuals did not factor in the court's decision, we will not distinguish among them in this brief summary.

and heirs, argued that Converse obtained the mortgage by fraud. The court stated that this defense would be unavailing if Blumrich could be charged with constructive notice as to the facts relevant to the misrepresentations made by Converse. It concluded, however, that Blumrich did not have such notice:

> A person is chargeable with constructive notice where, having the means of knowledge, he does not use them.... But he can not be bound to do more than apply to the party in interest for information, and will not be responsible for not pushing his inquiries further, unless the answer which he receives corroborates the prior statements, or reveals the existence of other sources of information. Blumrich, receiving information which led him to infer that Converse had become chargeable with the obligations of Coggeshall's contracts, applies to Converse to ascertain the facts, and is distinctly informed by the latter that he knows nothing of such contracts, and has never obligated himself in any way to respect them. As between himself and Converse, Blumrich had fully discharged his duty by making the inquiry; and the former will not be heard to claim that Blumrich should have received and acted upon the prior information, instead of the positive statements made by himself to the contrary. When one seeks the best authority to ascertain the truth of rumors, and is there misled, the person misleading him can hardly be allowed to support rights by insisting that he should still be chargeable with the reports which he had endeavored in vain to verify.

14 Mich. at 120–21 (citations omitted).

The Plaintiff argues that "one could hypothesize a potential purchaser contracting with [the Debtor] to buy [the Debtor's] leasehold interest with [SNB]. If the purchaser asks to see evidence of the leasehold interest and [the Debtor] shows its lease with [SNB] to the purchaser without disclosing the transfer to [the Fund,] under the rule of *Converse*, the purchaser has fulfilled his obligation to inquire and will not be charged with notice of [the Fund's] interest." Page 3 of Plaintiff's Reply Brief.

Contrary to the assumption implicit in the Plaintiff's argument, we do not believe that *Converse* intended to establish a rigid "rule" or generally applicable proposition regarding what constitutes reasonable diligence on the part of a prospective purchaser in such matters. In light of the court's qualification that Blumrich's duty of inquiry was discharged *"[a]s between himself and Converse,"* 14 Mich. at 120 (emphasis added), it appears that the court might have held Blumrich chargeable with constructive notice as against a more sympathetic plaintiff. *Cf. U.S. Fidelity & Guar. v. Black,* 412 Mich. 99, 115, 119, 313 N.W.2d 77 (1981) (describing *Converse* as establishing the doctrine of "innocent misrepresentation," and stating that the doctrine "only applies to parties in privity of contract"). If *Converse* has any application to the Plaintiff's hypothetical scenario, then, it suggests that the potential purchaser could not defeat the rights of the Fund under such circumstances; unlike Converse, the Fund has made no misrepresentations ("innocent" or otherwise) and is not in privity of contract with the hypothetical purchaser posited by the Plaintiff.

A more fundamental problem with the Plaintiff's argument is that the unusual set of facts in *Converse* simply does not translate well to this case. In its scenario, the Plaintiff equates the Debtor's position as grantor with that of Converse. Yet an argument could also be made that it is SNB, not the Debtor, which is most analogous to Converse. In *Converse,* the issue was whether Blumrich had constructive notice of Converse's rights and obligations under the land contracts, and the court reasoned that Converse was the "best authority" for Blumrich to consult regarding such rights. Applying this logic to the Plaintiff's hypothetical transaction, the party best situated to advise the purchaser regarding SNB's rights and obligations under the lease would be SNB, not the Debtor. Viewed from this perspective, *Converse* actually supports the conclusion that SNB would have been the single most ap-

propriate party for a prospective purchaser to consult regarding SNB's rights in the property.

Indeed, it is difficult to imagine how an inquiry into SNB's rights in the property would be complete without obtaining, or at least seeking, relevant information from SNB itself. The seller has an obvious incentive to make misrepresentations as to SNB's rights which would increase the apparent value of the interest to be sold. Absent exceptional circumstances, SNB would not be bound by such misrepresentations; the Plaintiff itself concedes that incorrect information provided by a seller to a purchaser regarding the rights of a third party in possession is not binding on the possessor. Page 4 of Plaintiff's Reply Brief. This necessarily implies that a reasonable inquiry must include a good faith effort by the potential purchaser to obtain or verify information from sources other than the would-be seller. In this case, as in most situations involving a third party in possession, the only other logical source would have been the third party itself, here SNB. We therefore conclude that a potential purchaser could not have conducted a reasonable inquiry regarding SNB's rights without contacting SNB directly.

This conclusion is supported by the Michigan Supreme Court's decisions in *Spring*, 134 Mich. at 86, 95 N.W. 1003 (in which the court, as previously noted, observed that the defendant could have determined the identity of the property owner by asking the tenant in possession), and *Hull v. Gafill Oil Co.*, 263 Mich. 650, 249 N.W. 24 (1933). In *Hull*, one-half of an equally divided court stated:

> In the instant case, plaintiff knew that defendant was in possession, and that there were valuable improvements on the premises, specially adapted to the defendant's uses. It was no hardship for her to inquire as to whether there were any other modifications or changes in the lease. Ordinary business prudence should have prompted her to do so. . . .

> *Prospective purchasers should inquire of the tenant in possession as to whether there have been any modifications of the recorded lease or any other collateral or subsequent agreements affecting it.*

263 Mich. at 654, 249 N.W. 24 (emphasis added). The comments in *Hull* are especially significant given that the court was concerned with a *recorded* lease; the duty to inquire of the tenant is more clearly defined when, as is the case here, there is no lease of record.[8]

Based on the foregoing, we hold that a prudent purchaser would have sought to obtain information directly from SNB regarding SNB's rights in the property. As previously stated, we also find that such an inquiry would have disclosed the Fund's interest. We thus conclude that the conveyance to the Fund would prevail over the claim of a subsequent purchaser from the Debtor, and that the Plaintiff, therefore, cannot avoid the Debtor's conveyance to the Fund pursuant to § 544(a)(3). Because we conclude that there is no genuine issue of fact raised by the respective motions before us, an order will enter granting the Defendants' motion for summary judgment as to count I of the complaint and denying the Plaintiff's motion for summary judgment.

---

8. The other justices in *Hull* believed that the plaintiff had *no duty* to obtain information from the tenant regarding the terms of the lease since the lease had been recorded. 263 Mich. at 656–57, 249 N.W. 24. This emphasis on recordation implies that a majority of the court would likely have imposed such a duty in the absence of a recorded lease.