**In re: James William McGEE, Debtor.**

**Richard C. REMES, Trustee, Plaintiff,**

v.

**James W. McGEE, M.D., Dee Ann McGee, and Robert McGee, Defendants.**

**Bankruptcy No. 87–03203.**
**Adv. No. 89–0328.**

United States Bankruptcy Court,
W.D. Michigan.

May 21, 1996.

Deborah L. Gray–Olker, Gray and Gray, P.C., Kalamazoo, Michigan, for Plaintiff.

James B. Frakie, Day & Sawdey, P.C., Grand Rapids, Michigan, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JO ANN C. STEVENSON, Bankruptcy Judge.

This matter was brought before the Court on Plaintiff Chapter 7 Trustee Richard C.

Remes' motion for summary judgment. At issue is whether, as a matter of law pursuant to 11 U.S.C. § 544(a)(3), the Trustee may "strong-arm" into the Debtor's estate a parcel of Bahamian real estate owned by the Debtor but subject to an unrecorded declaration of trust in favor of his son, Defendant Robert McGee. Finding no material facts at issue and that Plaintiff is entitled to judgment as a matter of law, Plaintiff's motion is hereby granted.

### I. Jurisdiction

This adversary proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this district on July 23, 1984, and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). Accordingly, this Court is authorized to enter final judgment subject to those appeal rights afforded by 28 U.S.C. § 158(a) and Fed.R.Bankr.P. 8001 through 8005. The following constitute the Court's findings of fact and conclusions of law as required under Fed.R.Bankr.P. 7052(a).

### II. Facts and Procedural History

In October 1983, the Debtor James W. McGee and his then-wife Dee Ann McGee agreed to purchase a home in St. Georges Cay in the Bahamas from Herbert and Rhea Kontny for $440,000. They also agreed to pay $45,000 for furniture and other personalty located on the property. The McGees tendered $485,000 to the Kontnys on October 23, 1983, consummating the agreement, but no deed or contract evidencing the transaction was recorded as provided for under the Registration of Records Act. *See,* (Bahamas) Stat. Ch. 175. On October 14, 1983, a Declaration of Trust was executed by the McGees naming the oldest of their five children, Defendant Robert McGee, as beneficiary. The Trust document runs but one page and states in pertinent part,

> ... we the said James William McGee and Dee Ann McGee do hereby declare that we stand seised of the [Bahamian home] TO THE USE of [Robert McGee] his heirs and assigns forever.[1]

1. In the Debtor's April 3, 1996 affidavit, he states that he placed the Bahamas property in trust with his son Robert as beneficiary "with the understanding that Robert would control the

This document, too, went unrecorded.[2]

The Debtor, but not Ms. McGee, filed a petition for Chapter 7 relief on October 23, 1987. The Trustee inspected and photographed the Bahamas property in December of 1988. On September 29, 1989, the Trustee filed the instant adversary proceeding.[3]

To say that progress in this case has been glacial would be too generous. Six years after the complaint was filed, in November 1995, the parties stipulated that the law of the Bahamas would apply in this case. On March 1, 1996, the Trustee moved for summary judgment. The Defendants filed their response on March 15, 1996, to which the Trustee filed a further response on April 1, 1996.

In the interim the McGees had decided to divorce and on March 5, 1991, they filed a property settlement agreement in the family court of Greenville County, South Carolina.[4]

In his motion for summary judgment the Trustee seeks to set aside the transfer in trust to Robert McGee under the Code's "strong arm" provision, 11 U.S.C. § 544. A hearing on the motion was held on May 14, 1996, in Kalamazoo, Michigan. Having considered the applicable law, the parties' briefs, and the argument presented at the hearing, we now address the merits of the Trustee's motion.

### III. Issue Presented

Whether, as a matter of law under § 544(a)(3), the Trustee may be considered a bona fide purchaser of the Bahamas home?

[property] for the benefit of himself and his brother's and sisters...." *See* Affidavit of James McGee. No mention of the other children is made in the trust instrument, however.

2. The Trustee argued that the failure to record the trust rendered the conveyance void. We need not reach this issue, however, because we find the transfer avoidable under 11 U.S.C. § 544(a)(3) in any event.

3. In the original complaint the Trustee alleged the following:
—Count I: Defendants Robert McGee and Dee Ann McGee have no interest in the Bahamas home because only the Debtor's funds were used to purchase it; further, neither the deed nor the trust were recorded;
—Count II: The McGees executed the trust receiving no consideration from Robert McGee, at a time when the Debtor was insolvent;

### IV. Standard for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993); *see also, Boyd v. Sachs (In re Auto Specialties Manufacturing Co.),* 153 B.R. 457, 461–62 (Bkrtcy.W.D.Mich.1993) (discussing "new era" for adjudication of summary judgment motions developed in wake of three 1986 U.S. Supreme Court cases, including *Celotex*). All facts and inferences drawn therefrom must be viewed in the light most favorable to the Defendants as the respondents in this matter. *See, Michigan United Food and Commercial Workers Unions v. Muir Co.,* 992 F.2d 594, 597 (6th Cir.1993). In general, "where the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. *Sachs,* at 462 (citation omitted).

### V. The "Strong–Arm" Provision: § 544(a)(3)

The Trustee claims that under 11 U.S.C. § 544(a)(3) the McGees transfer in trust to Robert McGee may be set aside in favor of the estate. That section reads,

(a) The trustee shall have, as of the commencement of the case, and without regard

—Count III: At the time the trust was executed the McGees believed they would incur debts beyond their ability to repay;
—Count IV: The transfer in trust was made with the intent to defraud creditors;
—Count V: The failure to record the trust left the McGees the option to alter or revoke it.
The Trustee sought the set aside of the transfer in trust, the vesting of the property in the estate, and the grant of further relief including attorney's fees.

4. Argument was heard concerning the McGees' treatment of the Bahamian property in their divorce proceedings. We find the issue irrelevant. The Court must hypothesize a purchase of the property as of the petition date; on that date the McGees were still husband and wife.

to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

\*  \*  \*  \*  \*  \*

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

■  The term "applicable law" means state law in this context; that is, state law—Bahamian law, in this case—controls who may be a bona fide purchaser. *Owen–Ames–Kimball Co. v. Michigan Lithographing Co. (In re Michigan Lithographing Co.)*, 997 F.2d 1158, 1159 (6th Cir.1993). In an often cited case, *Saghi v. Walsh (In re Gurs)*, 27 B.R. 163 (9th Cir. BAP 1983), the Appellate Panel explained that for § 544(a)(3) purposes, the hypothetical bona fide purchaser should be defined under federal bankruptcy law; then the court should consult applicable state law to determine whether the trustee could achieve such status under state law. The *Gurs* panel defined the hypothetical bona fide purchaser as:

A person who

(1) at the instant the petition is filed, purchases from the debtor;

(2) for value;

(3) in good faith;

(4) without actual knowledge of any defect or limitation in title;

(5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity;

(6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g. that the conveyance is in writing and acknowledged); and

(7) who as of the moment of purchase, takes all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance (e.g. recording).

*In re Gurs*, at 165; *see also, Costell v. Costell (In re Costell)*, 75 B.R. 348, 352 (Bkrtcy. N.D.Ohio 1987) (cites *Gurs* definition). Thus, in this case the Trustee is deemed to have taken all steps necessary to perfect the purchase of the Bahamian property, including recording a hypothetical deed, as of the instant of Dr. McGee's bankruptcy filing.

It must be understood that while § 544(a)(3) states that bona fide purchaser status *vel non* must be adjudged "without regard to any knowledge of the trustee or of any creditor," courts have universally held that it is the trustee's actual knowledge which is irrelevant; constructive knowledge of a claim on real property will defeat bona fide purchaser status—provided such status would be defeated thereby under applicable state law. *See, e.g., Michigan Lithographing*, at 1159; *Fletcher Oil Company, Inc. v. Elm Lawn Cemetery Co. (In re Fletcher Oil Company, Inc.)*, 124 B.R. 501, 503 (Bkrtcy. E.D.Mich.1990); *Robbins v. Lenz (In re Perrin's Marine Sales, Inc.)*, 63 B.R. 4 (Bkrtcy. W.D.Mich.1985). As explained below, however, the Court finds that the Bahamas is *not* such a jurisdiction but is instead a "pure race" jurisdiction. In effect, and for the reasons which follow, the Trustee must be deemed the first to record his conveyance to the defeat of Defendant Robert McGee's beneficial interest.

### VI. Analysis and Ruling

■  The Court's task in adjudicating this motion is to hypothesize the existence of a purchaser of the Bahamian real property as of the date the Debtor filed Chapter 7 and then to decide whether such purchaser could perfect the conveyance under the law of the Bahamas. *See, Robertson v. Peters (In re Weisman)*, 131 B.R. 148, 151 (Bkrtcy. N.D.Cal.1991).

■  In the Bahamas a purchaser of real property may record the conveyance, but generally is not required to do so. (Bahamas) Stat. Ch. 175(3)(1). However, a properly recorded conveyance will enjoy priority over an earlier but unrecorded one. (Bahamas) Stat. Ch. 175(10). The latter section reads, in pertinent part:

> If any person after having made and executed any conveyance, assignment, grant, lease, bargain, sale or mortgage of any lands or of any goods or other effects within The Bahamas, or of any estate, right or interest therein, shall afterwards make and execute any other conveyance ... of the same, or any part thereof, or any estate, right or interest therein; such of the said conveyances ... as shall be first lodged and accepted for record in the Registry shall have priority or preference; and the estate, right, title or interest of the vendee ... claiming under such conveyance ... so first lodged and accepted for record shall have priority in time of execution of any other such documents;
>
> Provided that this section shall not apply to any disposition of property made with intent to defraud.

Nowhere does the statute mention notice on the part of the subsequent purchaser or transferee. Thus, it is a so-called "race" or "pure race" statute.[5]

Under statutory authority and case law cited by the Defendants, however, recording a conveyance is not the only mechanism through which a subsequent purchaser could be charged with notice of an earlier conveyance in the Bahamas. Citing Section 199(1) of the Law of Property Act of 1925, in some instances subsequent purchasers and transferees will be charged with constructive or inquiry notice of prior, unrecorded conveyances, which notice would defeat bona fide purchaser status. According to the Defendants, the Law of Property Act of 1925 "re-mains the law of the Bahamas to this day."[6] If that were the case the Bahamas would be considered a "race-notice" jurisdiction, where the first person to record a conveyance without actual or constructive notice of prior conveyances would enjoy superior rights in property.[7] The Trustee cites only Bahamas Stat. Ch. 175(10), the "race" statute.

The Defendants also cite *Kingsnorth Trust Ltd. v. Tizard* [1986] 2 All E.R. 54, a case decided under the Law of Property Act of 1925, wherein a mortgagee was held to have been on inquiry notice of the mortgagor's wife's earlier-in-time but unrecorded interest in the subject property. During the May 14, 1996 hearing, counsel for the Defendants again cited *Kingsnorth,* referring to it as a Bahamian case; the Trustee's counsel acknowledged the case as binding authority in the Bahamas but sought to distinguish it on the facts.

The Court considered the authorities provided by the parties and conducted its own research into the matter. We were somewhat surprised to discover that the Law of Property Act of 1925 is simply *not* good law in the Bahamas. Rather the cited section, Ch. 175(10), is controlling. The Law of Property Act of 1925 is an English law and *Kingsnorth v. Tizard* an English case. Whatever binding authority English laws and cases once held in the Bahamas was usurped by *The Bahamas Independence Order 1973,* which was enacted as part of the Bahamian Constitution on July 10, 1973, the day the Bahamas secured independence from England, its colonial ruler.[8] The *Order* states, in

---

**5.** In a "race" or "pure race" jurisdiction, "the first to record regardless of notice of an unrecorded deed earlier in time has the better rights." BLACK's LAW DICTIONARY 1275 (6th ed. 1990). While "race" statutes are rare in the U.S., North Carolina and Louisiana are "race" jurisdictions. *See, Note, Transferring Title to Partnership Real Property Under the U.P.A. and Proposed R.U.P.A.,* 27 REAL PROP.PROB. & TR.J. 143, 154 (n. 44). In addition, Delaware's mortgage recording statute is a "race" statute. DEL.CODE ANN.TIT. 25, § 2106; *see, Handler Construction, Inc. v. CoreStates Bank, N.A.,* 633 A.2d 356, 366–67 (Del.1993).

**6.** Defendants' Response Brief, at 6.

**7.** Michigan is a "race-notice" jurisdiction, although the concept of constructive notice was developed in the courts. *See* M.C.L.A. § 565.29; *In re Fletcher, supra,* at 503; *see also,* BLACK's LAW DICTIONARY 1275 (6th ed. 1990) (defining "race notice" jurisdiction as one where "the first to record in the chain of title without notice of a prior unrecorded deed or mortgage has the better rights").

**8.** As a British colony of long-standing up until its independence, English common law certainly influences Bahamian law. Indeed, the Bahamas has been described as a "sister common law jurisdiction with procedures akin to [U.S. procedures]." *In re Culmer,* 25 B.R. 621, 631 (Bkrtcy. S.D.N.Y.1982).

On the other hand, even before the Bahamas gained its independence the only English cases which were controlling authority in the Bahamas

part, that laws in force in the Bahamas prior to independence—many of them English laws—remain in force after independence, but are subject to modification or repeal by the Bahamian legislature. BAHAMAS CONST. ART. 1(4)(a). As the two recording statutes at issue are clearly in conflict the Bahamian statute must control.

Thus, the Defendants claim that one or more McGee children, including Robert, were living at the Bahamas home at least periodically during October 1987, and that their presence and knowledge of the trust would have put a prospective purchaser on inquiry notice of the trust conveyance, can be assigned no weight. Just as ineffectually, the Defendants cite several bankruptcy cases in which unrecorded interests in property were deemed perfected either by open possession or by operation of constructive or inquiry notice to the defeat of a Trustee's "strong-arm" powers. *See, e.g., Perrin's Marine, supra; In re Fletcher Oil, supra.* Those cases, however, were decided under authority of "race notice" jurisdiction law. Neither party cited any Bahamian authority that tempers the effect of its "race" statute under which the first to record is the first in right notwithstanding notice of prior unrecorded conveyances or of persons in possession who may claim unrecorded interests.

### VII. Conclusion

The Code, by § 544(a)(3), endows the Trustee with the status of a bona fide purchaser of real estate as of the date the petition in bankruptcy is filed. The Court was called on to decide whether under Bahamian law the Trustee could have purchased the Bahamas home on the date of filing and immediately perfected the transfer. For the reasons stated, the Court finds in the affirmative as a matter of law. Therefore,

THE MOTION IS GRANTED.

---

were House of Lords decisions on points of English law applicable in the Bahamas, Judicial Committee of the Privy Councils decisions, and appeals from decisions entered in other Commonwealth jurisdictions where the point of law at issue was applicable in the Bahamas; other English decisions—such as *Kingsnorth*, a trial court decision—would have had persuasive authority, at most. *See, Koch Industries, Inc. v. Vosko*, 1972 WL 364, * 15 (D.Kan.1972) (not reported in F.Supp.).